**Jerry HEGG, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Counterclaimant,**

v.

**Robert P. McGINNIS and James Lloyd, Defendants on Counterclaim.**

**No. CV 74–1244–RF.**

United States District Court, C. D. California.

June 2, 1977.

Gerald N. Shelley, Sikora & Price, Newport Beach, Cal., for plaintiff.

William D. Keller, U. S. Atty.; Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Division Jeffrey S. Niesen, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge, Sitting by Designation

This case began as an action by the plaintiff for refund of $53.77 plus interest and costs which he paid on February 2, 1973 as income taxes withheld from the wages of employees of Take I Productions, Inc. ("Take I"). Thereafter the United States assessed the plaintiff for a 100% civil penalty in the amount of $42,680.20 in lieu of federal income taxes withheld from the wages of employees of Take I for the quarter ending June 30, 1970.[1] Hegg claims that he is not a person subject to liability for such taxes within the meaning of 26 U.S.C. § 6672, which makes liable to a 100% civil penalty "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof . . . ." The United States has counterclaimed for the balance of the assessment, the amount of which is not in dispute. The court has jurisdiction over the entire action under 28 U.S.C. §§ 1340 and 1346(a)(1).

The only issues presented for litigation at the trial were:

1. Whether Jerry Hegg, within the meaning of §§ 6671 and 6672 of Title 26, United States Code, was a responsible person of Take I with the duty to collect, truthfully account for and pay over to the United States of America withholding and

---

1. Even though the Internal Revenue Service ("I.R.S.") did not assess taxes for the second quarter of 1970 against plaintiff until April 9, 1973, his suit for refund was neither inappropriate nor premature. *See Werner v. United States,* 374 F.Supp. 558 n.1 (D.Conn.1974), *aff'd,* 512 F.2d 1381 (2d Cir. 1975).

F.I.C.A. taxes deducted from the wages of the employees of Take I during the second quarter of 1970;

2. Whether as a responsible person within the meaning of §§ 6671 and 6672 of Title 26, United States Code, Jerry Hegg willfully failed to collect, truthfully account for and pay over to the United States of America withholding and F.I.C.A. taxes deducted from the wages of the employees of Take I during the second quarter of 1970, within the meaning of § 6672 of Title 26, United States Code.

### Legal Standard

A taxpayer is liable for a penalty assessment under § 6672 if " '(1) the individual person had the authority to direct or control the payment of corporate funds and (2) such a responsible person willfully failed to comply with the tax withholding statutes.' " *Werner v. United States*, 374 F.Supp. 558, 560 (D.Conn.1974), *citing Stake v. United States*, 347 F.Supp. 823, 826 (D.Minn.1972). *Accord, Teel v. United States*, 529 F.2d 903, 905 (9th Cir. 1976). It is clear that the taxpayer bears the burden of proving by a preponderance of the evidence that he was not a responsible person required to account for or pay over the taxes or that he did not willfully fail to comply with that duty. *Werner v. United States, supra; Melillo v. United States*, 244 F.Supp. 323, 326 (E.D.N.Y.1965). This burden remains with the plaintiff both on his claim for refund and on the government's counterclaim for a

penalty assessment provided that the government has offered into evidence a certification of its assessment. *Psaty v. United States*, 442 F.2d 1154, 1158–60 (3d Cir. 1971). In this case, the certificate of the 100% penalty tax assessment against Jerry Hegg in the amount of $42,680.20 for the period ending June 30, 1970, and the payments made thereon through December 24, 1975, was received in evidence.

### Findings of Fact

The considerable oral testimony which was taken confirmed and filled out the documentary evidence, the substance of which is set out below. Take I Productions, Inc. was organized as a California corporation in 1964 under the name of its founder and sole stockholder Jimmy Lloyd Productions, Inc. As stated in its Articles of Incorporation its purpose was "(a) Primarily and initially to engage in the specific business of motion picture career motivation." Very briefly, its business consisted of attracting and encouraging theatrical hopefuls to permit Take I to find a market for their histrionic talents. The venture did well initially and slowly grew. In the fall of 1969, Jerry Hegg began to work for Take I. He had promotional and managerial ability, and his rise in the company was meteoric. By February of 1970 he had become general manager. This is reflected in his formal employment contract with the company entered into on February 10, 1970, reproduced in the margin.[2] On the same day a stockholder's

---

2. EMPLOYMENT AGREEMENT

JERRY HEGG

This Agreement, made and entered into this 10 day of February, 1970, by and between TAKE I PRODUCTIONS, INC., a California corporation, hereinafter referred to as "Employer;" and JERRY HEGG, an individual, hereinafter referred to as "Employee,"

WITNESSETH:

WHEREAS, Take I Productions is a highly volatile company desirous in growing into high dollar volumes, accompanied by high professional services of thousands of talent prospects; and

WHEREAS the founder of Take I Productions, Inc., admittedly cannot handle the tremendous burdens of expanding the business; said burdens being imposed by the greater accounting needs, and the tremendous detail involved in expanding the sales, enrollments, and consequential services to enrollee, and

WHEREAS, Jerry Hegg is a man of demonstrated ability as regards these great burdens, and a man whose ability, optimism, and inclination and health fits him to accomplish the execution of the expansion program;

NOW, THEREFORE, IT IS MUTUALLY AGREED, BY AND BETWEEN THE PARTIES, THAT:

meeting was held (Lloyd being the sole stockholder) with Jerry Hegg and Donald Hegg (Jerry's brother and an earlier employee of Take I) in attendance. At that meeting, Lloyd noted his desire to reduce his business activity and pointed to the new pace of expansion and growth "due to the very successful and expert efforts of Donald Hegg and Jerry Hegg; and, that any furtherance of the tightening up of the business controls, and the gearing up, logisticswise, for the immediate growth of the Corporate business must include Don and Jerry Hegg prominently in the management, operation, sales and accounting." Then he agreed to sell one-half of his stock in Take I to Donald Hegg and other key employees responsive to the wishes of Jerry Hegg for $100 per share in exchange for 10-year notes, bearing interest at the rate of 7% per annum.

The "pace" continued. At a special meeting of the Board of Directors on May 14, 1970, Jerry Hegg opened the meeting and stated that it "should begin with the acceptance of the resignation of Donna Ashby, as officer and as director of the company." Indeed, at the direction of Jerry Hegg, she had been "terminated" as an employee on May 5, 1970. For many years prior to her discharge Donna Ashby had been in charge of the books. During those years Take I had maintained a federal depository bank account into which all employee withholding taxes had been paid. All such taxes were paid out of that account for the first quarter of 1970. It is quite clear that Donna Ashby's termination was related to her refusal to discontinue the system of depositing withholding taxes into the depository bank account. She called Mr. Lloyd and told him of the situation. He became agitated and spoke to Jerry Hegg about it. Lloyd testified that Jerry told him that he would "rather use the capital and pay a penalty; if he was a few days late it wouldn't matter." He also testified that at a meeting shortly thereafter Jerry shook his hand and said, " 'I have paid the payroll taxes to the government and I knew that would relax you and make you happy.'" However, instead of paying them, he expended the assets of the company to expand its operations.

More fully, the minutes of the May 14 meeting record that:

"Jerry Hegg opened the meeting by stating that the Waiver of Notice had

1. By and for the consideration of FIVE HUNDRED DOLLARS ($500.00) per week, paid weekly, plus FIVE DOLLARS ($5) per enrollment in the company, whether by way of enrollment through the efforts of the parent organization, or by way of the franchisees, Jerry Hegg does hereby agree to be hired, and is hired, as General Manager in and for the employer, for a period of ten (10) years from date;

2. That the duties of Jerry Hegg shall be those generally assigned to the General Manager, which include the basic decisions, other than board policy-making, that attend to a business on a daily basis, such as hiring and firing of employees, purchasing equipment, space and supplies, the handling of employees in general, the procuring of up-to-date accounting data, and cash-flow facts, and projections for the business, and the periodic formal reporting to the board, either personally or through a board member, among other duties, and each said duty also becomes a responsibility;

3. The board may, from time to time, amend the employee's contract, to the employee's benefit, as the business grows;

4. The contract for the said amount in paragraph 1 is for his salary and is to be exclusive of automobile and expenses pertaining to the job, which shall be furnished by employer.

IN WITNESS WHEREOF, we set our hands and seals this 10 day of February, 1970.

/s/ Jimmy Lloyd
Jimmy Lloyd, President & Chairman

/s/ Donald Hegg
Donald Hegg, Vice President

/s/ Donna Ashby
Donna Ashby, Secretary & Treasurer

ACCEPTED:

/s/ Jerry Hegg
Jerry Hegg, Employee

been signed by the two remaining directors and that the meeting could formally begin; and should begin with the acceptance of the resignation of Donna Ashby, as officer and as director of the company. . . .

"Jerry Hegg, after giving a short report of the company's activities and the company's severe management problem, spoke of the immediate need of the company's realignment of the board to coordinate the board's titles and responsibilities with the actual 'field' responsibilities of the various key personnel in the organization. After discussion it was noted that Jerry Hegg, himself, has undertaken the primary responsibility for the company, its overall aims and purposes, its liabilities, its personnel, and has undertaken the tremendous task of literally 'building' a nationwide organization with the coordinating proprietory [*sic*] spirit of his brother, Donald Hegg.

" . . .

"Therefore, upon motion duly made, seconded, and unanimously carried,

IT WAS RESOLVED that the new board consist of the following:

1. Jerry Hegg, Chairman of the Board, acting as chief executive officer and general manager of the corporation;

2. Jimmy (James) Lloyd, President and Founder;

3. Donald Hegg, Vice President;

4. Robert McGinnis, Treasurer;

5. Byron Stensen, Secretary;

and all of the above are directors, and it is further RESOLVED that, should the Articles of Incorporation or the By-Laws currently disallow five directors, that nothing that is done by way of the new board, unanimously, shall render the actions of the board void, or voidable, since it shall be construed that the directors formerly elected, namely: Donald Hegg and Jimmy (James) Lloyd, shall be the acting directors.

"The Minutes should show that all of the above-named accepted their new directorships for a period of one (1) year from date . . . ."

At the next meeting of the Board of Directors on June 15, 1970, the minutes record:

"The meeting opened with Jerry Hegg's resignation as Chairman of the Board of Take I Productions, Inc., and all its affiliates. Jerry Hegg explained that his resignation was brought about solely by advice from the company attorney for parole considerations." [3]

### Responsibility of Plaintiff

In the face of the foregoing evidence it is absolutely clear that Jerry Hegg has not met his burden of proving that he was not a person whose duty it was to pay over the withholding and social security taxes or that he did not "willfully fail to comply with that duty." *Melillo v. United States,* 244 F.Supp. at 326. Indeed, the evidence clearly establishes that he was not only aware of the fact that the taxes were unpaid, but even more, that he used his authority to order that they should not be paid. He was in control of the corporation at all times during the period for which the taxes were not paid. He had the power and responsibility to pay them. He willfully failed to do so. And, since he did not "truthfully account for, and pay over any tax" as required by Section 6672 of the Internal Revenue Code, he is personally liable for the amount of the tax uncollected, unaccounted for, and unpaid. *Cf. Slodov v. United States,* 552 F.2d 159 (6th Cir. 1977).

The Certificate of Assessments and Payments for the period ending June 3, 1970 against Jerry Hegg (Exhibit A) reflects a balance of $41,111.93 due and owing by Jerry Hegg as of December 24, 1975.

The complaint of the plaintiff is dismissed. Enter judgment for the United States of America on its counterclaim to

---

**3.** Jerry Hegg was a parolee. As a condition of his parole, he was forbidden from participating in anything that had to do with securities, pro-

motion of money, promotion of franchises and, in general, promotion of stock, bonds, and other financial capital.

recover from Jerry Hegg $41,111.93, with interest thereon from December 24, 1975 to the date judgment is entered, together with its costs.

The foregoing constitutes the court's findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P.

SO ORDERED.