(631 P.2d 258)

No. 52,316

In the Matter of the Bulk Sale of the Inventory, Furniture, Fixtures, Vehicles, and all Other Assets of HART's TRANSFER AND STORAGE, INC.

Opinion filed July 10, 1981.

*Michael L. Paup, Carleton D. Powell,* and *Wynette J. Hewett,* attorneys, Tax Division, Department of Justice, Washington, D.C., for appellant United States.

There was no appearance by appellees.

Before SPENCER, P.J., PARKS and MEYER, JJ.

MEYER, J.: This is an appeal from an order distributing bulk sale proceeds.

The issue herein is whether the trial court erred in directing that the payment of the tax liens of the United States should be applied to the trust fund portion of the tax assessment.

Hart's Transfer and Storage, Inc. (Hart's), turned over its assets to auctioneers pursuant to K.S.A. 1980 Supp. 84-6-106(4) for a bulk sale of the assets. The auctioneers deposited the $37,940.63 proceeds from the sale into the registry of the district court and filed an interpleader action requesting that the creditors of Hart's be permitted to file their claims in the court and that the court determine the amount to which each was entitled. The United States filed a claim in the amount of $43,804.61 in this proceeding based on tax liens relating to the unpaid withholding taxes and

social security taxes, plus penalties and interest, assessed against Hart's.

Both Richard Hart, secretary-treasurer and general manager, and Lucille Hart, president, requested a bulk sale of the assets of the corporation and wanted the proceeds available for taxes to be applied to the trust fund portion of the taxes.

The United States (appellant) argues that the payment of the tax was involuntary and that the government, therefore, could apply the payments in accordance with its own policy and did not have to follow the wishes of the taxpayer. While no appellee filed a brief, the corporate officers of Hart's argued below that the payment was voluntary, and, hence, the taxpayer had the right to direct how the payments should be applied.

The order of distribution awarded $21,657.65 to First National Bank, $4,872.61 to Union National Bank, and the balance of the fund, approximately $11,410.37 to the United States. The trial court further found that the payment was voluntary and directed the Internal Revenue Service (IRS) to apply the sums received in this proceeding to the trust fund portion of the taxes. The United States appeals from that order.

Employers are required to withhold from employees' wages an amount for payment of income taxes and also for social security taxes. 26 U.S.C. 3102(a), 3402, 3403. It is provided in 26 U.S.C. 7501 that withheld taxes "shall be held to be a special fund in trust for the United States."

If the employer fails to turn over the amount withheld for taxes to the IRS, the employees are still credited with those amounts against their tax liability as if they were in fact paid over to the government. *Dillard v. Patterson,* 326 F.2d 302, 304 (5th Cir. 1963); *Moore v. United States,* 465 F.2d 514, 517-18 (5th Cir. 1972), *cert. denied* 409 U.S. 1108 (1973); *Hartman v. United States,* 538 F.2d 1336, 1340 (8th Cir. 1976).

An officer or employee of a corporation who is under a duty to pay the tax for the corporation, however, may be held liable for an amount equal to the total amount of the tax not paid over if he wilfully fails to truthfully account for and pay over such tax. 26 U.S.C. 6671(b), 6672.

Presumably the corporate officers of Hart's wish to have the sale proceeds available for taxes applied to the trust fund portion of the owed tax in order to reduce their potential liability.

The general rule with regard to application of payments in debtor-creditor relations as recognized in Kansas is as follows:

" 'It is the law that a debtor who owes two or more accounts to a creditor may direct to which account any money which he voluntarily pays shall be applied. It is also the law that when the debtor pays without directing to which of his accounts his payment shall be applied, the creditor has the privilege of applying the sum paid to either of the accounts.' " *Neal v. Gideon,* 157 Kan. 1, 4, 138 P.2d 419 (1943), citing from *Lumber Co. v. Workman,* 105 Kan. 505, 509, 185 Pac. 288 (1919).

See also *Carry, Executrix v. Homer,* 195 Kan. 475, 407 P.2d 538 (1965); 70 C.J.S., Payment § 50, p. 255.

The cases involving tax payments have recognized this rule. In *Liddon v. United States,* 448 F.2d 509 (5th Cir. 1971), *cert. denied* 406 U.S. 918 (1972), the taxpayer failed to request how funds should be applied and the IRS was allowed to apply the payment in accordance with their usual policy. In *Hewitt v. United States,* 377 F.2d 921 (5th Cir. 1967), a taxpayer who demanded application of payment to a particular fund had no right to direct application of the payment made by the corporation in that the demand was made almost sixteen months after he had severed his connection with the corporation. The court ruled that in the absence of directions, the IRS had the right to follow its policy to credit the funds so that the balance left unpaid would be withheld taxes which could be assessed against the responsible officers of the corporation if necessary.

In *Hirsch v. United States,* 396 F. Supp. 170 (S.D. Ohio 1975), the taxpayer sent a check with a return for part of the amount due. The check, on the back, designated how the present payment and two past payments should be applied to trust fund liability. The court held that as to the two past payments the designation was insufficient to bind the IRS because the two past payments had already been accepted by the IRS prior to the designation. The *Hirsch* court stated:

"Had Carriage House designated how it wished its deposits to be allocated when it made the deposits, or had it so designated before the time for filing its second quarter return had expired, the defendant [U.S.] would have had no choice but to accept the designation and apply the deposits accordingly. [Citations omitted.]" 396 F. Supp. at 172.

See also *Datlof v. United States,* 370 F.2d 655 (3d Cir. 1966).

The right of debtors to direct application of payments does not apply, however, to involuntary payments.

In cases of involuntary payments, the debtor clearly has no right to make an application of payments. There is a split of authority as to whether the creditor has a right to make an application of payments or whether the creditor must defer to the court to make such application. 70 C.J.S., Payment § 51, p. 257. Some courts hold that neither the debtor nor the creditor has the right to direct the application of payments and the court must make the application, following basic principles of equity, seeking to protect the rights and priorities of all the parties. *United States v. Transamerica Insurance Company,* 357 F. Supp. 743, 748 (E.D. Va. 1973), citing 15 Williston on Contracts § 1797 (3d ed. 1972), and 60 Am. Jur. 2d, Payment §§ 89, 106.

We find no cases and none have been cited to us which deal with bulk transfers such as this in determining what was a voluntary payment. Some situations which have been recognized as involuntary payments include: (1) attachment of proceeds from the sale of collateral, *Gall. Tr. & Sav. Bk. v. Darrah,* 153 Mont. 228, 456 P.2d 288 (1969); (2) creditors forcing receivership, *Paving Co. v. Speedways, Inc.,* 250 N.C. 358, 108 S.E.2d 641 (1959); (3) condemnation proceedings, *Adams v. Taylor,* 253 N.C. 411, 117 S.E.2d 27 (1960); (4) mortgage foreclosure in a receivership proceeding, *Safe Dep. & Tr. Co. v. Woodbridge,* 184 Md. 560, 42 A.2d 231 (1945); and (5) payment of insurance proceeds for fire loss, *Oxford Finance Companies, Inc. v. Gray,* 317 So.2d 910 (Miss. 1975).

In *United States v. Transamerica Insurance Company,* 357 F. Supp. 743, the court held a fund produced by a sale of corporate assets to another was the substantial equivalent of attachment proceedings in that the sale constituted an agreement between the transferor, the transferee and the United States, whereby the United States agreed to forego attachment proceedings if the parties set up a special fund in the U. S. Treasury wherein 60 percent of the proceeds from the sale would be deposited and held pending settlement of the Government's claim against the transferor.

The U. S. Tax Court in *Amos v. Commissioner of Internal Revenue,* 47 T.C. 65 (1966), defined an involuntary payment of federal taxes as "any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." 47 T.C. at 69.

In *Amos,* payments received from the bank and an insurance company pursuant to notice of levy were determined to be involuntary payments.

In *O'Dell v. United States,* 326 F.2d 451 (10th Cir. 1964), payments received pursuant to a bankruptcy proceeding were found to be involuntary payments.

In *United States v. De Beradinis,* 395 F. Supp. 944 (D. Conn. 1975), payments received as a result of IRS levies and participation in litigation constituted involuntary payments.

In *O'Dell,* the taxpayer's wife appealed from an order of the lower court disbursing funds on deposit in the registry of the court in a bankruptcy proceeding. The wife claimed that the court erred in not directing the IRS to apply funds in the manner requested by the wife or the trustee. The court recognized the rule that a debtor voluntarily paying his debt may direct the application of his money to such items or demands as he chooses, but stated, "such is not the case, where, as here, the payment is made involuntarily as in an execution or judicial sale." 326 F.2d at 456. The court found no error in the bankruptcy court refusing to direct the application of funds.

Kansas has held that even where the proceeds of collateral may result from involuntary proceedings, a *creditor* has the option of applying the same to the debt or debts which may be most precarious, unless different directions were given by the debtor when the collateral was pledged. *State Bank of Downs v. Moss,* 203 Kan. 447, 454 P.2d 554 (1969).

*O'Dell* is the case most in point with regard to situations involving involuntary payment of taxes. The court there approved a finding by the bankruptcy court that it had no power to order the IRS to apply involuntary payments in a specific way.

The U. S. Tax Court in *Amos* characterized the view that the creditor has the right to direct the application of involuntary payments as the view adopted with respect to federal taxes, penalties and interest, citing *O'Dell*:

"[T]aking the text of the *O'Dell* opinion as our guide, we believe that, as between the debtor and the creditor and in the interest of orderly administration, the better rule for Federal tax purposes is to permit the Commissioner's agent to apply involuntary payments in the manner he chooses." 47 T.C. at 69.

The main voluntary aspect of the bulk transfer was that it was

not forced by creditors, but was instigated by the corporate officers of Hart's.

We conclude that the act of the debtor herein in turning its assets over to the auctioneer for sale under K.S.A. 1980 Supp. 84-6-106(4) was voluntary. However, when the sums derived from that sale were paid into the district court and creditors were advised to file claims so that the court could decide the amount and priority to which each was entitled, the payments so ordered were involuntary. Being involuntary, they were subject to the application as designated by the creditor. Therefore, while we find no error in the trial court's findings of amounts and to whom same were to be paid, the trial court did err when it ordered IRS how to apply the amount awarded to it.

The order of the trial court is affirmed insofar as it determined the amounts and priorities of creditors herein. However, the trial court is reversed insofar as it ordered IRS to allocate the amount determined to be due it in a specific way. The case is thus affirmed in part and reversed in part, and remanded to the trial court for an order consistent with this opinion.

Affirmed in part; reversed in part and remanded.