Ernest A. KAPPAS, Plaintiff,

v.

UNITED STATES of America, Defendant.

UNITED STATES of America, Counterclaimant,

v.

Ernest A. KAPPAS and Ralph D. Brown, Defendants on Counterclaim.

No. CV 82–3743–ER(Kx).

United States District Court, C.D. California.

Sept. 29, 1983.

Jeffrey G. Varga, Asst. U.S. Atty., Alexander H. Williams III, U.S. Atty., Los Angeles, Cal., for defendant and counterclaimant U.S.A.

Edward H. Stone, Newport Beach, Cal., for Brown.

Hochman, Salkin & DeRoy, Beverly Hills, Cal., for plaintiff and defendant on counterclaim.

## MEMORANDUM DECISION

RAFEEDIE, District Judge.

This matter was tried before the Court sitting without a jury on July 11–12, 1983. Plaintiff and counterdefendant Ernest A. Kappas was represented by Hochman, Salkin and DeRoy, by Martin N. Gelfand; defendant and counterclaimant the United States of America was represented by the United States Attorney's Office by Jeffrey G. Varga, Assistant United States Attorney; and counterdefendant Ralph D. Brown was represented by Edward H. Stone. Having heard all evidence and argument in this case, the Court now renders its decision as follows.

## I

This case involves two Internal Revenue Service assessments· made pursuant to 26 U.S.C. § 6672.[1] One assessment, involving the fourth quarter of 1977 and the first quarter of 1978, was entered against Ernest A. Kappas ("Kappas") in the amount of $41,723.89. The other assessment, involving the third and fourth quarters of 1977 and the first, second and third quarters of 1978, was entered against Ralph D. Brown ("Brown") in the amount of $119,-893.03. These assessments were made by the Commissioner of Internal Revenue because a significant part of the income taxes and Federal Insurance Contribution Act taxes which were withheld from the wages of the employees of Insta-Tune, Inc., during the third and fourth quarters of 1977, and the first, second and third quarters of 1978 were not paid over to the United States of America.

Insta-Tune was incorporated under the laws of the State of California on July 7, 1975, and was engaged in the business of franchising automotive tune-up centers. Specifically, for a set fee, usually between $10,000 and $15,000, Insta-Tune, Inc. sold franchises. The franchise package included the right to own an Insta-Tune tune-up center in a given geographical area, finding the site for the facility, training the new Insta-Tune owner, and stocking the center with equipment used in the tune-up business. Insta-Tune, Inc. also directed the advertising for the franchisees, who would pay the corporation a fee for this service.

Brown, the founder of the corporation, was Insta-Tune's president, a director, and chairman of the board of directors from the date the corporation was formed through September, 1978. Kappas joined Insta-Tune, Inc. in June, 1977. Mr. Kappas was brought into Insta-Tune, Inc. because of his prior experience with Andy Granatelli's Tune Masters, a competitor of the corporation, and because of Mr. Kappas' financial background. During the two quarters for which he was assessed, Mr. Kappas was the corporation's executive vice-president, secretary, treasurer, and chief financial officer. Mr. Kappas was also a member of the corporation's Board of Directors from at least the latter part of 1977 to about June 1978, and owned approximately $11,-000 in shares of stock. In April or May, 1978, Kappas ceased working for Insta-Tune and resigned from his corporate offices.

Throughout Insta-Tune's history, a cash flow problem plagued the company. During the last two quarters of 1977 and the first three quarters of 1978, the following income and FICA taxes were withheld from employees of Insta-Tune and not paid by Insta-Tune to the Internal Revenue Service:

| Period | Amount of Penalty |
| --- | --- |
| 3Q1977 | $16,000.71 |
| 4Q1977 | 13,606.62 |
| 1Q1978 | 34,920.58 |
| 2Q1978 | 36,668.71 |
| 3Q1978 | 18,696.41 |
| | $119,893.03 |

Sometime after the third quarter of 1978, Insta-Tune filed for bankruptcy. The assets of the bankruptcy estate were insufficient to pay the government for these taxes withheld but not paid.

Brown was assessed for the entire amount of delinquent taxes, and Kappas was assessed for part of the fourth quarter of 1977 and the entire first quarter of 1978 for a total of $41,723.89. Kappas paid $200 of the assessment, filed a timely claim for a

---

**1.** 26 U.S.C. § 6672 provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

The word "person" is defined in § 6671:

The term "person," as used in this subchapter includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

refund, and that claim was denied.[2] He then filed this lawsuit to recover that amount, and the government has counterclaimed against both Kappas and Brown for the balance due under the assessment.

## II

■ The government contends that Brown and Kappas are persons who, by virtue of their corporate positions and corresponding responsibilities, were required to collect, truthfully account for and pay over to the government the taxes withheld from the employees of Insta-Tune. The government further contends that they willfully failed to do so, and thus should be held personally accountable. Once the assessments are made and are properly admitted into evidence, the burden is on the individual assessed to prove, by a preponderance of the evidence, either that he is not a "responsible person" as that term is defined, or if responsible, that he did not fail to pay the taxes "willfully." *Hegg v. United States,* 437 F.Supp. 29, 30 (C.D.Cal. 1977) (taxpayer bears the burden of proof).

### A. *Responsible person*

Kappas stipulated with the government that he was a person who was required, within the meaning of 26 U.S.C. §§ 6671 and 6672 to collect, truthfully account for and pay over to the United States of America taxes withheld from the wages of the employees of Insta-Tune, Inc. Thus, the only question for the Court is whether Brown has established, by a preponderance of the evidence, that he is not a responsible person.

■ A person is a "responsible person" if he has a duty to perform any of the three functions enumerated in Section 6672. *Slodov v. United States,* 436 U.S. 238, 250, 98 S.Ct. 1778, 1786, 56 L.Ed.2d 251 (1978); *Mazo v. United States,* 591 F.2d 1151, 1153 (5th Cir.1979), *cert. denied sub nom Lattimore v. United States,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

Whether or not Mr. Brown knew that withheld taxes had not been paid is irrelevant to the question of responsibility. "[R]esponsibility is a matter of status, duty, and authority, not knowledge." *Mazo v. United States, supra,* at 1156. Although the two quarters with respect to Mr. Kappas overlap the five quarters with respect to which Mr. Brown was assessed, both individuals can be found to be "responsible persons" during the overlapping period, *United States v. Graham,* 309 F.2d 210 (9th Cir. 1962), and liability under Section 6672 can be imposed on both. *Turner v. United States,* 423 F.2d 448, 449 (9th Cir.1970).

Regarding those who fall within the concept of a responsible person within the meaning of Sections 6671(b) and 6672, the Ninth Circuit in *Turner v. United States, supra,* at 449 stated as follows:

Section 6672 includes "all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred;" it reaches those who have " 'the final word as to what bills should or should not be paid, and when.' " [Citations omitted.] In this context, "final" means significant, rather than exclusive control. Section 6672 "was designed to cut through the shield of organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax ..." [Citation omitted.]

■ The control necessary to support liability under Section 6672 is simply the ability to direct or control the payment of corporate funds. *See Wilson v. United States,* 250 F.2d 312, 316–17 (9th Cir.1957). Thus a person is "responsible" if he has authority in determining what bills should be paid or not paid, and when. *Turner v. United States, supra,* at 449. Such control may be inferred from Mr. Kappas' and Mr. Brown's ability to sign and co-sign checks. Indeed, it has been held that "[a]uthority to co-sign [checks] in effect gives one the

---

**2.** Plaintiff paid $200 of the assessed amount. The parties to this action have stipulated that that amount represents an amount attributable

to a single employee's withholding and is thus a proper divisible amount. *See Boynton v. United States,* 566 F.2d 50, 52 (9th Cir.1977).

authority to decide which creditors should be paid." *Burack v. United States,* 461 F.2d 1282, 1291, 198 Ct.Cl. 855 (1972).

■ The evidence adduced at trial overwhelmingly establishes the status of Mr. Brown as a "responsible person." He was the ultimate power, and had the ultimate authority over the financial affairs of the corporation. The evidence is undisputed that Brown had, if he chose to exercise it, final say as to each check that was signed, and alternatively each check that was not. Brown, Insta-Tune's president and Chairman of the Board of Directors, was the driving force behind the company, and was clearly "responsible" as that term is defined in the statute and the case law.

B. *Willfulness*

■ Both Kappas and Brown were responsible persons, yet both contend that they did not "willfully" fail to pay the taxes due. The term "willfully" as used in Section 6672 has been defined as the voluntary, conscious, and intentional act of preferring other creditors over the United States. *Bloom v. United States,* 272 F.2d 215 (9th Cir.1959), *cert. denied,* 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960). The presence of an intent to defraud or deprive the United States of the taxes collected or withheld for its account is not required, nor need bad motives be present. *Id.*

■ Willful conduct within the meaning of the statute includes a failure to investigate or to correct mismanagement after notice that withholding taxes have not been remitted to the government. *United States v. Leuschner,* 336 F.2d 246 (9th Cir.1964). Moreover, a "responsible person" is considered to have acted willfully if he acted with a reckless disregard of a known or obvious risk that withholding taxes may not be remitted to the government. *Teel v. United States,* 529 F.2d 903 (9th Cir.1976).

■ Willfulness can be proven by showing a preference of other creditors over the United States either before or after the due date for the corporation to remit the withheld taxes. *Maggy v. United States,* 560 F.2d 1372, 1375 (9th Cir.1977). Willfulness can also be evidenced by the risk or use of the withheld funds for other corporate purposes, regardless of any expectation that adequate funds would be available at the due date. *Bernardi v. United States,* 507 F.2d 682 (7th Cir.1974) *cert. denied sub nom Richter v. United States,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975).

■ As noted above, the burden of proof on the issue of willfulness rests with the taxpayers, and not the government. Thus, the question is whether Kappas and Brown have proved, by a preponderance of the evidence, that they did not "willfully" fail to carry out the responsibility of collecting and paying over withholding taxes to the United States Government. The Court concludes, after consideration of all of the evidence presented, that they have not. Brown was president of the company and Chairman of the Board of Directors. The uncontroverted testimony at trial demonstrated that he had, if he chose to exercise it, the complete authority to issue or refrain from issuing checks to the various creditors of the business. His defense that he simply relied on his "experts" regarding the financial affairs of the business, and the decisions regarding payment of creditors were completely in their hands is not believable, nor is it support by the evidence that was presented to the Court.

The evidence indicates that Brown had full control over the payment of creditors, and made the final decisions as to who was paid and when. During the period in question (the last two quarters of 1977 and the first three of 1978) Brown signed on his own checks for over $611,000 and co-signed checks totalling over $491,000. Indeed, the evidence demonstrates that Brown actually instructed his "experts" to wait as long as possible to pay the withholding taxes, apparently expecting to take care of the short term debts with the cash flow of the failing business and ultimately satisfy the debt to the United States when business improved. Unfortunately, it never did.

■ The evidence also demonstrates that Kappas had a significant degree of control over the payment of creditors as well, and should be held jointly liable for the taxes unpaid during the last quarter of 1977 and the first quarter of 1978. Kappas was hired to run the finances of the business, as Insta-Tune was experiencing cash flow problems at the time he was brought in. Testimony at trial shows that Kappas discussed the problem regarding the withholding taxes with Brown, and that the two made the affirmative decision to not pay the government as required by law. Kappas contends that he never wrote a check without prior approval by Brown, but the evidence suggests otherwise. During the six month period in question, Kappas signed on his own checks totalling over $417,000, and co-signed with Brown checks amounting to over $70,000. Evidence was presented to suggest that at times when both Brown and Kappas were present, Brown did indeed have the *ultimate* power over who was paid and when. However, it is clear that Kappas acted on his own several occasions, and it is also apparent that he had the authority to act on his own. There is no question that liability for non-payment of withholding taxes can be found as to two individuals acting in concert. Kappas, although subordinate to Brown in the corporate heirarchy, nevertheless had "significant" control over the finances of the company, sufficient to be found liable pursuant to Section 6672 for preferring other creditors over the government.[3]

### III

In conclusion, there is no question that both Kappas and Brown are responsible persons as that term is defined in Section 6672 and the relevant case law. The fact that they acted "willfully" is fully established by both the testimony presented at trial and the documentary evidence presented by the government. Both individuals had "significant" control over the decision

of which bills were to be paid and when, consequently, both are jointly liable and were thus properly assessed.

Defendant and counterclaimant shall submit a proposed judgment in accordance with this opinion within four days from this date.

---

3. Kappas suggested that he had no choice, and only paid bills authorized by Brown. However, Thomas Gruber, who was employed by Insta-Tune as an accountant, resigned his position because the taxes were not paid and he feared that he would be held responsible. Kappas could certainly have taken a similar course of action.