In re DuCHARMES & COMPANY, Debtor.

DuCHARMES & COMPANY, INC., Plaintiff–Appellee,

v.

STATE OF MICHIGAN, et al., Defendants,

United States of America, Defendant–Appellant.

No. 87–1715.

United States Court of Appeals, Sixth Circuit.

Argued April 8, 1988.

Decided July 26, 1988.

David H. Dickerson, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington,

D.C., Marlene Dayne, Asst. U.S. Atty., Flint, Mich., Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Michael C. Durney, W.J. Hewett, G.D. Gray (argued), Washington, D.C., for defendants-appellants.

Dennis M. Haley, Jack K. Segal, Winegarden, Shedd, Haley Lindholm, Donald H. Robertson (argued), Flint, Mich., for plaintiff-appellee.

Before WELLFORD and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

This is a Chapter 11 bankruptcy case in which the Internal Revenue Service contends that the debtor's plan of reorganization ought not be allowed to provide that tax payments be allocated first to the "trust fund" portion of the debtor's pre-petition tax liability. The IRS and the State of Michigan objected to the debtor's proposed reorganization plan, and the bankruptcy court sustained their objections. The district court subsequently reversed the bankruptcy court's ruling, and the IRS has appealed. We think the bankruptcy court was correct, and we shall reverse the district court's judgment.

The debtor, DuCharmes & Company, defaulted on the payment of corporate income, Social Security, unemployment and withholding taxes during 1983 and 1984. On March 4, 1985, the company filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The IRS filed a proof of claim for delinquent pre-petition taxes, interest and penalties in the total amount of $53,339. Two thirds of the claim related to trust fund taxes—taxes withheld from the wages of the debtor's employees and held in trust for the government under § 7501 of the Internal Revenue Code of 1954. Receipt of trust fund taxes by the government would extinguish *pro tanto* the potential liability of any "responsible persons" who might otherwise have had to pay such taxes by reason of § 6672 of the Code,* and this would be true whether or not the government ever collected any of the other back taxes.

The debtor filed a proposed amended plan of reorganization under which payments made to the IRS and the Michigan Department of Treasury would be allocated first to the trust fund tax liability. Both the IRS and the state objected to the plan.

The bankruptcy court sustained the objections of the taxing authorities and confirmed the plan only after striking the provision in question. The district court reversed, 75 B.R. 71. The district court recognized that the debtor wanted to extinguish the "responsible persons'" personal liability under § 6672, and noted that if the corporation failed to meet its overall tax liability, this would leave non-trust fund taxes (for which responsible persons are not liable) unpaid. The court held, however, that because payments made under a confirmed Chapter 11 plan of reorganization are "voluntary," they must be applied in accordance with the debtor's wishes. The court action involved in confirming a Chapter 11 plan is not sufficient to render payment of taxes under the plan "involuntary," the district court concluded, unless the court institutes "enforced collection measures such as actual seizure of property or money." The district court found it significant that there are many options open to the debtor in structuring repayment of its pre-petition tax liability, and noted that as far as the best interests of the debtor and the policies of the Bankruptcy Code are concerned, it is immaterial whether the plan happens to benefit the tax authorities or the individual "responsible persons."

The Internal Revenue Code provides that taxes such as withholding and Social Security taxes, which must be deducted by employers from the wages paid to employees, "shall be held to be a special fund in trust for the United States." 26 U.S.C.

---

* Section 6672 imposes personal liability on any officer or employee responsible for the collection and payment of trust fund taxes who "willfully fails to collect such tax, or truthfully account and pay over such tax, or willfully attempts in any manner to evade or defeat such tax or the payment thereof."

§ 7501(a). The withheld funds are often referred to as "trust fund" taxes. See *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978).

Employees from whose wages the taxes have been withheld are not liable for such taxes even if the employer fails to pay the money over to the government. *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797, 799 (9th Cir.1987), citing *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir.1986). As noted above, however, individual officials of an employer who fail to pay over the taxes that have been withheld are subject to personal liability. 26 U.S.C. § 6672. No corresponding personal liability attaches for non-trust fund taxes, such as corporate taxes.

When a taxpayer makes a "voluntary" payment to reduce his overall tax liability, IRS policy ordinarily permits the taxpayer to designate the particular tax liability to which the payment will be applied. See *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983). When the payment is considered "involuntary," however, the IRS makes the allocation, applying the money first to non-trust fund taxes. Because the personal liability of the responsible persons provides an additional source for collection of trust fund taxes, this approach allows the government to maximize its total recovery. See *Technical Knockout Graphics, Inc.*, 833 F.2d at 799.

In *Amos v. Comm'r*, 47 T.C. 65, 69 (1966), the Tax Court gave the following definition of "involuntary payment:"

"An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor."

In *Muntwyler*, a non-bankruptcy case, the Court of Appeals for the Seventh Circuit held that payments made under an assignment for the benefit of creditors were "voluntary" because there had been no court action or administrative action resulting in an actual seizure of property or money.

See 703 F.2d at 1033. The *Muntwyler* court distinguished the assignment for the benefit of creditors from payments made in bankruptcy. *Id.* at 1034 n. 2.

In *Technical Knockout Graphics*, a bankruptcy case, the Court of Appeals for the Ninth Circuit held that payments made by a debtor in possession after filing a Chapter 11 petition but prior to confirmation of a reorganization plan are involuntary payments. See 833 F.2d at 802. The Court of Appeals for the Third Circuit has held, similarly, that "payments on pre-petition federal tax liabilities by a debtor pursuant to a plan of reorganization under Chapter 11 are involuntary under the federal tax law [and therefore] the debtor cannot direct the allocation of such payments between the trust fund and non-trust fund portions of the debtor's tax liabilities." *In the Matter of Ribs–R–Us, Inc.*, 828 F.2d 199, 199 (3d Cir.1987). The Court of Appeals for the Eleventh Circuit, on the other hand, has held that a bankruptcy court has discretion to decide on a case-by-case basis whether a debtor may allocate tax payments in a Chapter 11 reorganization. *In the Matter of A & B Heating & Air Conditioning, Inc.*, 823 F.2d 462 (11th Cir.1987), *vacated and remanded for consideration of mootness question*, —— U.S. ——, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988).

Upon review of the relevant statutes and caselaw, we agree with the Third and Ninth Circuits that payments made to the IRS on pre-petition tax liabilities by a Chapter 11 debtor ought to be considered "involuntary payments" that may not be allocated to pay the debtor's trust fund liabilities first. (We note that at the time of the district court's decision here, that court did not have the benefit of the decisions of the Third and Ninth Circuits.) The judgment of the district court is REVERSED, and the case is REMANDED for proceedings consistent with this opinion.