**In re STANMOCK, INC., dba Tri–Cities Auto Painting & Body Repair and Tri–Cities Paint and Body, Debtor.**

**UNITED STATES of America, on Behalf of the INTERNAL REVENUE SERVICE, Appellant,**

v.

**STANMOCK, INC. and Gerald Moch, Appellees.**

**BAP No. SC–87–1396 VAsR.**

**Bankruptcy No. 83–001100–P11.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 16, 1988.

Decided Aug. 29, 1989.

Concurring Opinion Sept. 6, 1989.

Thomas Carlucci, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellant.

David M. Korrey, Law Offices of David M. Korrey, San Diego, Cal., for appellees.

Before VOLINN, ASHLAND and RUSSELL, Bankruptcy Judges.

OPINION

VOLINN, Bankruptcy Judge:

The United States has appealed an order of the bankruptcy court that allows the debtor to direct how the Internal Revenue Service (IRS) must allocate its Chapter 11 plan tax payments. The issue presented is whether a bankruptcy court can confirm a Chapter 11 plan, specifying that federal tax payments to the IRS must be applied to satisfy the trust fund portion of delinquent federal taxes prior to the nontrust fund portion. We reverse.

We addressed this issue in *United States v. Condel, Inc. (In re Condel, Inc.)*, 91 B.R. 79, 82 (9th Cir. BAP 1988), which held that such payments should be treated as involuntary with the result that the IRS was held entitled to apply the debtor's plan payments in its discretion. *Condel*, in considering application of tax payments pursuant to a plan, applied the reasoning of *United States v. Technical Knockout Graphics, Inc. (In re Technical Knockout Graphics, Inc.)*, 833 F.2d 797 (9th Cir. 1987), which concerned payments before confirmation of a plan. Debtors and their principals, including the appellant here, continue to argue that *Technical Knockout Graphics* is distinguishable when payments under a plan are at issue. There are several published decisions relating to this issue, which apply different reasoning and state varying conclusions as to application of tax payments at different stages of a bankruptcy case. We, therefore, elaborate our views here.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Stanmock's Federal Tax Debt

The debtor Stanmock, Inc. commenced its Chapter 11 case on March 9, 1983. The Internal Revenue Service (IRS) filed a lump sum claim, totalling $161,260.87, for unpaid prepetition tax liabilities and penalties, that included $110,127.26 in withheld federal income taxes and insurance contributions (FICA) for the fourth quarter of 1980 through the first quarter of 1983.

The IRS' claim for unpaid withholding reflects the debtor's duty as an employer to deduct from its employees' gross wages scheduled amounts for their obligations to make social security contributions and to pay income tax, 26 U.S.C.A. §§ 3102(a), 3402(a) (West 1989), and to hold them in trust for the United States until remitted. *Id.* § 7501(a). If the employer fails to turn over the funds, the government must credit the employees as if the taxes had actually been paid. *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978); *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir.1986); *Sorenson v. United States*, 521 F.2d 325, 328 (9th Cir. 1975). Accordingly, to encourage or enhance withholding and payment of payroll taxes, when the nominal employer (commonly a corporation) does not collect and pay the tax, any other person responsible for the collection and payment of withholding is liable, on a one-hundred percent penalty basis, for the trust fund taxes when he "willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof...." 26 U.S.C.A. § 6672(a) (West 1989). The responsible person's liability under section 6672 is not dischargeable and survives his bankruptcy. *In re Clate*, 69 B.R. 506, 509–10 (Bankr.W.D.Pa.1987) (citing *United States v. Sotelo*, 436 U.S. 268, 274–79, 98 S.Ct. 1795, 1799–1802, 56 L.Ed.2d 275, *reh'g denied*, 438 U.S. 907, 98 S.Ct. 3126, 57 L.Ed.2d 1150 (1978) (interpreting section 17(a) of the former Bankruptcy Act)); *see also* 3 *Collier on Bankruptcy* ¶ 523.06[4] & n. 8 (L.P. King 15th ed.1979) (asserting that the same conclusion results under Bankruptcy Code section 523(a)(1) as in *Sotelo* under the Act). Directors and officers are often targets for tax collection after the corporate employer files for bankruptcy relief because "responsible persons" under section 6672 include those who have significant control over which bills to pay and when. *Kappas v. United States*, 578 F.Supp. 1435, 1439, 1441 (C.D.Cal.1983) (citing *Turner v. United States*, 423 F.2d 448, 449 (9th Cir.1970); *Wilson v. United States*, 250 F.2d 312, 316–17 (9th Cir.1957), *reh'g denied*, 254 F.2d 391 (9th Cir.1958). Willfulness as contemplated by the statute has been construed as "the voluntary, conscious, and intentional act of preferring other creditors over the United States." *Kappas*, 578 F.Supp. at 1440 (citing *Bloom v. United States*, 272 F.2d 215 (9th Cir.1959), *cert. denied*, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960)). It appears that failure to collect trust fund taxes, or use of accumulated trust funds in order to bolster a failing business, is not uncommon. *See*

*Slodov*, 436 U.S. at 243, 98 S.Ct. at 1783 (withholding taxes "can be a tempting source of ready cash to a failing corporation beleaguered by creditors").

The IRS collects the amount of unpaid trust fund taxes only once, whether collected in part or fully from each responsible person and/or the corporate employer. *United States v. Technical Knockout Graphics, Inc. (In re Technical Knockout Graphics, Inc.)*, 833 F.2d 797, 799 (9th Cir. 1987) (citing *USLIFE Title Ins. Co. ex rel. Mathews v. Harbison*, 784 F.2d 1238, 1243 & n. 7 (5th Cir.1986)). To maximize tax collection, IRS policy is to first collect what it can from the debtor taxpayer for nontrust fund liabilities, thereby preserving the personal liability of the responsible persons for any trust fund portion. *See In re Ribs-R-Us, Inc.*, 828 F.2d 199, 201 (3d Cir. 1987) (citing IRS Policy Statement P–5–60, IRS Manual (May 30, 1984), directing application first to nontrust fund taxes due).

### B. Stanmock's Plan Payments to the IRS

The debtor's liquidation plan in this case did not originally designate specific types of tax liabilities to which its payments to the IRS should be applied. Confirmation was considered at a December 3, 1986, hearing after the debtor's assets had been transferred on March 10, 1986, for cash and promissory notes upon approval of the debtor's unopposed application to sell its property. Stanmock proposed an immediate payment to the IRS with available monies and, if funds were insufficient, for periodic payments thereafter as outstanding notes were paid.

One of the debtor's two equity security holders, Robert L. Standley, requested modification of the plan, asserting that the debtor could not anticipate generating sufficient funds to fully pay the IRS and that his own consequent potential personal liability as a "responsible person" for unpaid trust fund taxes would be inequitable. He asked specifically that the court supplement or clarify the plan to provide that any disbursements to the IRS would be "voluntary," so that the debtor could specify how its payments would be applied. Appellee

Gerald Mock (Mock), the other stockholder, joined in the motion at oral argument. The IRS objected and also argued that it was entitled to interest while addressing the proper rate to be applied.

The court took the dispute between Standley and the IRS under submission and subsequently issued a memorandum, concluding that the payments would be voluntary and assigning a discount rate for calculating deferred payments to the IRS. On April 7, 1987, the government timely appealed the court's April 3, 1987, rulings, but argued solely the voluntariness matter in its opening brief. Only Gerald Mock has responded.

### STANDARD OF REVIEW

No factual issue has been presented to this panel. We review the question of whom has the authority to direct allocation of tax payments as a matter of law. *In re Ribs-R-Us, Inc.*, 828 F.2d 199, 202 (3d Cir. 1987); *Professional Technical Services, Inc. v. United States (In re Professional Technical Services, Inc.)* 94 B.R. 578, 582 (E.D.Mo.1988).

### DISCUSSION

#### A. Voluntariness and Tax Collection Policy

The general policy of the IRS is based on the rationalization that, when a "voluntary" payment is made, the taxpayer may designate the tax liability to which the government applies the payment. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983). But as to involuntary payments, IRS policy, directing allocation thereof as it sees fit, has been uniformly sanctioned by the courts. *Id.; see also Ribs-R-Us*, 828 F.2d at 202 (favoring a uniform rule in bankruptcy as to allocation of tax payments as involuntary in order to foster predictability).

The question of whether a debtor in bankruptcy can in his discretion allocate federal tax payments has consistently turned on the issue of voluntariness. The court in *Muntwyler* applied the following definition from *Amos v. Commissioner*, 47

T.C. 65, 69 (1966): "An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." 703 F.2d at 1032. The court disagreed with the government that a payment resulting from its claim, made with an assignee for the benefit of creditors, should be treated as involuntary. It held:

> the distinction ... is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual *seizure* of property or money as in a levy. No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim....

*Id.* at 1033 (court's emphasis). The court noted further that "[c]ases holding that payments made in bankruptcy are involuntary do not support the Government's position because court action is involved," *id.*, and followed with citations to decisions, concluding essentially that specified payments were involuntary because they were made pursuant to court order in litigation in which the IRS was participating. *See id.* at 1033–34 (citing *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir.1964); *In re Bulk Sale of Inventory*, 6 Kan.App.2d 579, 631 P.2d 258 (1981)). In a frequently cited footnote, the court noted that the government's position "might have been correct ... if the corporation had been in bankruptcy...." *See id.* at 1034 n. 2.

The common understanding of the term "voluntary" should pertain. *See id.* at 1034 ("[w]e will not interpret 'involuntary' to mean something completely at odds with the normal understanding of the term ..."). We note that the definition of "voluntary," in addition to acting by choice and without compulsion, consistently includes the following: "acting or done without any present legal obligation to do the thing done." *E.g., Webster's Third New International Dictionary* 2564 (P.B. Gove 1969). The *Muntwyler* court's character-

ization of tax payments made in the course of legal proceedings as being involuntary has been the foundation for deciding the issue before us.

### B. Tax Payments in Bankruptcy

Applying the above-stated principles to reorganization plans has resulted in diverging views among numerous bankruptcy courts, as well as in district courts on appeals, that have considered the issue. The various conclusions reached have been that plan payments are voluntary, *e.g., In re Lifescape, Inc.*, 54 B.R. 526, 529 (Bankr.D. Colo.1985); involuntary, *e.g., In re Vermont Fiberglass, Inc.*, 88 B.R. 41, 43–44 (D.Vt.1988); or that allocation is subject to the discretion of the court to be determined on a case-by-case basis, *e.g., In re B & P Enterprises, Inc.*, 67 B.R. 179, 183 (Bankr. W.D.Tenn.1986).

However, no circuit court of appeals has concluded that the payments should be treated as voluntary and subject to the debtor's discretion as to allocation. Three of five circuit courts that have considered whether post-petition payments to the IRS can be allocated by the debtor have decided that the payments are involuntary and may be allocated as the IRS prefers. *DuCharmes & Co. v. State of Michigan (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir.1988) (per curiam) (payments under Chapter 11 reorganization plan); *United States v. Technical Knockout Graphics, Inc. (In re Technical Knockout Graphics, Inc.)*, 833 F.2d 797, 802–03 (9th Cir.1987) (payments made by a debtor in possession under Chapter 11 prior to confirmation of a plan); *In re Ribs–R–Us, Inc.*, 828 F.2d 199, 204 (3d Cir.1987) (payments under Chapter 11 reorganization plan); *see also Monday v. United States*, 421 F.2d 1210, 1218 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970) (IRS was not bound by a bankruptcy referee's order, concerning allocation of funds received from the liquidation of a corporate debtor, so that it could preserve its claims for trust fund liabilities against the responsible corporate officers). As already noted, this court has also reached the same conclusion in *United States v. Condel, Inc. (In re Condel, Inc.)*,

91 B.R. 79, 82 (9th Cir. BAP 1988) (following *Technical Knockout Graphics* ).

In contrast, the First and Eleventh Circuits would leave allocation to a bankruptcy court's discretion. *IRS v. Energy Resources Co. (In re Energy Resources Co.),* 871 F.2d 223, 233 (1st Cir.1989) (following *United States v. A & B Heating & Air Conditioning, Inc. (In re A & B Heating & Air Conditioning, Inc.),* 823 F.2d 462, 465–66 (11th Cir.1987), *vacated and remanded for consideration of mootness question* — U.S. ——, 108 S.Ct. 1724, 100 L.Ed.2d 189 *on remand,* 861 F.2d 1538, 1540 (11th Cir.1988) (concluding that the payment by a responsible person of the trust fund tax liability did not render the case moot because he could still seek a refund so that the designation provision in the plan would have a continuing effect; ordering that, if the designation provision is not removed by agreement within a specified time frame, the prior opinion published at 823 F.2d 462 would be reinstated and the case thereby remanded for exercise of the bankruptcy court's discretion as to how to allocate tax payments under the reorganization plan)).[1] The court in *Energy Resources* concluded that tax payments under a Chapter 11 reorganization plan are involuntary, but the bankruptcy court nevertheless has authority to order allocation first to trust fund liabilities, contrary to IRS policy, provided that it reasonably concludes that the allocation will increase prospects for success of the plan. 871 F.2d at 226, 227.

The decisions favoring treatment of plan payments to the IRS as involuntary have been based mainly upon the restrictions, affecting the debtor's freedom of action, that are attendant to the bankruptcy. These were briefly summarized as follows:

The instant bankruptcy proceeding filed by the debtors is a legal action in which the IRS has filed a claim for delinquent taxes. The payments to be made by the debtors are under the bankruptcy court's jurisdiction and are made pursuant to a plan which must comply with the requirements of the bankruptcy code.

*In re Frost,* 47 B.R. 961, 965 (D.Kan.1985) (payments under a Chapter 13 plan held involuntary).

Courts reaching the opposite conclusion have essentially distinguished restriction from compulsion and, concluded that, despite the debtor's obligations under the Bankruptcy Code, he retains, at least in a reorganization, significant options. *E.g., In re A & B Heating & Air Conditioning, Inc.,* 53 B.R. 54, 57 (Bankr.M.D.Fla.1985), *aff'd without opinion,* No. 85–1552–Civ.–T–13 (M.D.Fla. May 7, 1986), *modified and remanded,* 823 F.2d 462 (11th Cir.1987); *In re Franklin Press, Inc.,* 52 B.R. 151, 152 (Bankr.S.D.Fla.1985). Some courts reason that the Code limitations on a debtor's activities do not "rise to a level of court action equivalent to a levy, judicial order, execution or judicial sale." *Lifescape,* 54 B.R. at 529; *A & B Heating & Air Conditioning,* 53 B.R. at 57.

We note that several of the opinions cited for the proposition that post-petition payments by a debtor to the IRS should be treated as voluntary have been reversed on appeal, including the decision in *Hineline* upon which the court below relied. *E.g., In re Professional Technical Services, Inc.,* 80 B.R. 157, 161 (Bankr.E.D.Mo.1987) (Chapter 11 is not a forum for compelling payment of claims, but for negotiating their payment), *rev'd,* 94 B.R. 578, 582 (E.D.Mo.1988) ("payments ·of taxes by a debtor undergoing Chapter 11 reorganization are most realistically classified as involuntary"); *In re Hineline,* 57 B.R. 248, 254 (Bankr.N.D. Ohio 1986) (in liquidating Chapter 11 case, payments to the IRS from the sale of property in the absence of a plan were classified as voluntary), *rev'd,* 72 B.R. 642, 645 (N.D.Ohio 1987) (court should exercise its discretion as to allocation of tax payments), *on remand,* 72 B.R. 645, 647 (Bankr.N.D. Ohio) (upon application of a discretionary standard like that adopted in *A & B Heating & Air Conditioning,* the court concluded that the IRS was autho-

---

**1.** After the Eleventh Circuit was notified that the bankruptcy court had authorized an amendment, deleting the designation of tax payments, it remanded the appeal to the district court to be dismissed as moot. *In re A & B Heating & Air Conditioning,* 878 F.2d 1311 (11th Cir.1989).

rized to allocate the manner in which its tax lien would be satisfied).

C. Bankruptcy v. Tax Collection Policies

In our view, the matter is not simply one of voluntariness or of the debtor's options weighed against his restrictions in bankruptcy, but of the debtor's fiduciary obligations and of the court's authority. "The debtor in possession is not free to deal with estate property as he chooses, but holds it in trust for the benefit of creditors, standing in the shoes of a trustee 'in every way.' " *In re Jehan–Das, Inc.,* 91 B.R. 542, 546 (Bankr.W.D.Mo.1988) (quoting, in a case concerning post-petition payments to the IRS outside of a plan, S.Rep. No. 989, 95th Cong., 1st Sess. 116, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5902; 11 U.S.C. § 1107). While it will always personally benefit the debtor in possession's principals for tax payments to be applied first to trust fund taxes, it does not necessarily follow that the best interest of the corporate debtor would be served. A conflict of interest is inherent in this regard between the debtor and its principals. As noted by the court in *Technical Knockout Graphics,* a debtor in possession, which is using the authority of the bankruptcy court to keep its creditors at bay while it reorganizes and regains financial stability, "is not free to abuse this system by designating its payments in a way that benefits only its responsible persons, and possibly harms other creditors, including the IRS...." 833 F.2d at 803.

One of the reasons that the Eleventh Circuit chose a discretionary standard was to allow the court to provide an incentive to the "responsible persons" to continue shepherding the reorganization, rather than to leave or to opt for liquidation in Chapter 7. *A & B Air Conditioning,* 823 F.2d at 465. The court reasoned that tax collection policies for maximizing trust fund tax collection compete with bankruptcy policies for providing a means of orderly and equitable repayment to creditors; further, because the Bankruptcy Code favors reorganization over liquidation, the court needs the authority to direct allocation of tax payments in a manner to enhance prospects for reorganization. *Id.*

We note with all due respect that the Eleventh Circuit's explicit conclusion that the Code's draftsmen preferred reorganization is unsupported, as is its implied conclusion that creditors will invariably benefit more fully from an attempted reorganization. Additionally, it has been established that the bankruptcy courts lack the power to prohibit or prevent tax collection directly or indirectly against third parties. *See e.g., Condel,* 91 B.R. at 81–82 (despite section 105 of the Bankruptcy Code, granting general equitable powers to effectuate Code policies and provisions, the court cannot confirm a Chapter 11 reorganization plan that would purport to enjoin the IRS from tax collection actions against the debtor's principals for the debtor's unpaid trust fund taxes); *Ribs–R–Us,* 828 F.2d at 203–04 (no legislative history was cited that suggests that Congress intended under the Bankruptcy Code to curtail the IRS' ability to use 26 U.S.C. § 6672 for collecting trust fund taxes; no provision in the Code allows the debtor or the bankruptcy court to direct application of payments and preclude recourse against responsible parties "who serve as guarantors of the United States' claims against the employer"); *Nevada Nat'l Bank v. Casgul, Inc. (In re Casgul, Inc.),* 22 B.R. 65, 66 (9th Cir. BAP 1982) (under sections 105 and 362, the bankruptcy court may not condition relief from stay as to debtor's property on the creditor's refraining from foreclosing on property of nondebtor principals); *Vermont `Fiberglass,* 88 B.R. at 44–45 (section 505 of the Bankruptcy Code, concerning liquidation of tax liabilities in bankruptcy court, does not confer jurisdiction over nondebtors, citing *In re Brandt–Airflex Corp.,* 843 F.2d 90 (2d Cir.1988)); *In re John Renton Young, Ltd.,* 87 B.R. 635, 637–41 (Bankr.D.Nev. 1988) (the Anti–Injunction Act in the tax code prohibits the bankruptcy court from granting relief to nondebtors from tax collection); *Steel Products, Inc. v. United States (In re Steel Products, Inc.),* 53 B.R. 999, 1002 (W.D.Wash.1985) (bankruptcy court lacks power to directly enjoin collec-

tion of taxes from nondebtor principals of a debtor corporation).

One court has reasoned that despite an allocation provision in a plan, the IRS can still seek payment from responsible persons before receiving funds from the corporate debtor. *Professional Technical Services*, 80 B.R. at 161. However, as noted by the court in *A & B Heating & Air Conditioning*, payment by a responsible person of his section 6672 liability does not terminate the debtor's liabilities for trust fund taxes because the responsible person may still seek a refund under 26 U.S.C. § 6511. 861 F.2d 1538 at 1539–40 (11th Cir.). Until the refund suit has been fully adjudicated or time-barred, the government is not assured of retaining the monies paid by the responsible person. *Id.* The designation provision has a continuing effect on tax collection in any event; if the reorganization fails, the government would be restricted to collecting from the responsible person the difference between the trust fund amounts due and what the debtor already paid, plus any amounts applied to nontrust fund liabilities from a subsequent liquidation.

## CONCLUSION AND ORDER

The responsible persons who seek relief from their tax liabilities through the bankruptcy of their corporation, possibly as a condition of assisting in its reorganization, are the same individuals who are or may be charged with not having collected or applied trust monies prior to bankruptcy. The tax consequences to them of such lapse should not be attenuated by the filing of a corporate bankruptcy. Despite any perceived benefit to the debtor in possession or failure by creditors to object, this would be contrary to the equitable underpinnings of the Bankruptcy Code, and also create a general policy directing the bankruptcy court to afford nondebtor third parties, in the position of guarantors, the ability to defer or avoid their obligations without submitting their assets to the bankruptcy process.

Unfortunately, the framing of this issue in terms of voluntary or involuntary has tended to generate a semantic dispute which does not address reality. Taxes are exactions, payment of which ultimately can be compelled. In this case, payment of the tax can only be made as the court directs. Because notice must be given to the affected party, including the IRS, which is entitled to be heard, and because the court's authority is requisite, the debtor's payment can hardly be characterized as an exercise of free will. Thus, the majority of courts have found that payment in the context of a judicial proceeding, including bankruptcy, should be treated as involuntary.

■ For the foregoing reasons, we conclude that a bankruptcy court cannot confirm a Chapter 11 plan that allows a debtor to designate how the IRS must allocate the payments it will receive. The order of the court below is REVERSED and the question of confirmation is REMANDED for further proceedings consistent with our disposition.

RUSSELL, Bankruptcy Judge, concurring:

I am constrained to concur in the result in this matter due to the precedential effect of the Ninth Circuit's decision in *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987), and the BAP's decision in *In re Condel, Inc.*, 91 B.R. 79 (9th Cir. BAP 1988).

I still personally believe that the payments made pursuant to the Court approved plan in a voluntary Chapter 11 case are voluntary, thereby permitting the debtor in possession's plan to dictate how the Internal Revenue Service must allocate the tax payments.

Nevertheless, it appears to me that the recent decision of the First Circuit in *In re Energy Resources Co.*, 871 F.2d 223 (1st Cir.1989), is correct which in effect held that pursuant to Section 105 of the Bankruptcy Code, the Court may confirm a plan which dictates the manner in which the taxes are to be allocated between trust fund and non-trust fund tax liability, and in so doing, must balance the interest of the estate and its creditors with the interest of the I.R.S.

Although the First Circuit concluded that, for the purposes of the IRS's *own*

rules, "payments made pursuant to a Chapter 11 plan are 'involuntary,'" the First Circuit went on to hold that this did not end the inquiry:

A central legal question remains: Does a bankruptcy court possess the legal power to order the IRS to apply a payment in a way that runs *counter* to IRS's own internal policies? That is to say, may a bankruptcy court order the IRS to apply an "involuntary" payment made by a Chapter 11 debtor to "trust fund" tax liabilities first, and only later apply payments to ordinary, non-trust fund tax liabilities? . . . . We conclude that the answer to this question is "yes," for several reasons.

First, Congress has granted bankruptcy courts broad equitable powers, including those powers "expressly or by necessary implication conferred by Congress." . . . . The bankruptcy court may "issue any order, process, or judgment that is necessary *or appropriate* to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105 (emphasis added). At least on some occasions, an order allocating Chapter 11 tax payments to "trust fund" liabilities first would seem "appropriate." . . . .

Second, bankruptcy courts have long had the legal power to tell creditors against which of a debtor's several debts they are to apply a particular payment; . . . . There is case law authority holding that courts may order the IRS to ignore its own "allocation" rules. . . . And, to the extent that courts have held to the contrary, they have simply assumed that the IRS's internal "voluntary"/"involuntary" categorization determined the matter without considering whether a bankruptcy court held the legal power to allocate tax payments over the IRS's objection. . . . .

Third, nothing in the bankruptcy statute limits, in any relevant way, the bankruptcy court's power to allocate when the creditor is the IRS. To the contrary, Congress specifically granted the bankruptcy court the power to restructure tax debts, along with other debts, insisting, only by way of compromise, that a Chapter 11 plan must ensure that the debtor will pay all tax debts *within six years* (from the date of assessment.) We must read the absence of such restrictions in light of Congress' specific recognition of the compromise nature of Chapter 11's tax debt policy. . . .

Fourth, it makes administrative sense for the bankruptcy court to have the power to determine, in some cases, the debt allocation of Chapter 11 tax payments. It is unlikely that the IRS, charged with the duty to collect taxes rather than to worry about firms in bankruptcy, could easily balance on a case-by-case basis the increased "tax collection" risk against the increased likelihood of "rehabilitation." But, it is very likely that the bankruptcy court could and would do so; indeed, it is just this kind of work that it ordinarily performs. . . . .

Fifth, the IRS' policy of allocating payments first to a corporate debtor's non-trust fund tax liability is not a statutory policy. That policy, created by internal rule, is designed to preserve the liability of the "responsible" individuals. It thereby increases the likelihood that the IRS will ultimately collect the *entire* tax debt ("trust fund" and non-trust fund) owed by the corporation. This objective is understandable, even commendable, for an agency whose mission is to *collect taxes.* . . . . But, we can find no *statute* that attaches so overriding an importance to this tax objective as to circumscribe a court's statutorily granted powers to the contrary. As a general matter, the IRS cannot, in any obvious way, circumscribe, by using an internal rule, a court's statutory powers. . . . .

Sixth, we can find no policy embodied in any specific statute, tax or otherwise, that either directly, or by manifesting a congressional intent, circumscribes a bankruptcy court's general power in the respect at issue here. The IRS argues strongly that requiring the IRS to allocate tax payments in Chapter 11 proceedings to "trust fund" debts first would frustrate the congressional intent of 11 U.S.C. § 6672—the statute that permits the IRS to collect unpaid "trust fund"

taxes directly from the personal assets of "responsible" individuals. But, we do not see how that is so.

\* \* \* \* \* \*

The IRS seeks to use the personal liability of "responsible" persons, not to help collect "trust fund" tax debts, but to collect *total* tax debts. And, in order to help maximize that total collection, it is willing, by not crediting the "trust fund" debt first, to run a greater risk of *not* collecting the "trust fund" debt at all, as would be the case if the reorganized corporation ran out of money while paying the non-trust fund tax debt and there were no personal assets of "responsible" persons.

\* \* \* \* \* \*

Thus, in weighing the competing aims of the Bankruptcy Code and Internal Revenue Code, we reach the same result as the Eleventh Circuit in *In re A & B Heating & Air Conditioning*, [823 F.2d 462 (11th Cir.1987)]. We hold that " 'the allocation question in a Chapter 11 case under the Bankruptcy Code should be left to judicial discretion to be decided on a case-by-case basis.' "....

*In re Energy Resources Co.*, 871 F.2d at 230–33 (emphasis in original; citations omitted).