**In re JEHAN–DAS, INC., Debtor.**

**Bankruptcy No. 81–03244–S–2–11.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

Oct. 17, 1988.

Gary A. Love, Ozark, Mo., for debtor.

Teresa Hair, Asst. U.S. Atty., Springfield, Mo., for I.R.S.

MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

FACTS

Jehan–Das, Inc., filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 20, 1981. The corporation continued to do business as a debtor-in-pos-

session. No plan was ever confirmed. Due to the debtor's inability to reorganize, business operations ceased during 1984 and the estate was ultimately liquidated.

During the Chapter 11 proceedings, the debtor failed to pay post-petition, employment related taxes. Pursuant to a court order allowing the filing of claims, the Internal Revenue Service (IRS) filed a Request For Payment of Internal Revenue Taxes dated December 17, 1987, showing a total of $148,078.63 including interest and penalties, in unpaid withholding, FICA and FUTA taxes which accrued subsequent to the filing of the Chapter 11 petition. The IRS Request for Payment also states additional late payment penalties after the date of said request accruing at the rate of $609.73 per month. For the nine months following the date of filing of said request an additional $5,451.57 is due. Total taxes, interest, penalty and late charges are, therefore, $153,530.20.

The amounts for Withholding and FICA taxes have been assessed personally against the corporate president, John Royal, as a 100% penalty pursuant to 26 U.S.C. Section 6672. John Royal was personally assessed liability for $36,111.23 for the taxable quarters ending December 31, 1981, through June 30, 1983 and a similar assessment was made on December 7, 1987, in the amount of $9,142.79, for the unpaid employees' portion of the debtor's employment tax liabilities for the taxable quarters ending September 30, 1983, through June 30, 1984. The IRS has filed a notice of tax lien for the trust fund portion of the corporate taxes assessed against John Royal in Tulsa County, Oklahoma.

The debtor has filed a Motion to Dismiss and has requested that the funds on hand be paid to the IRS with directions to apply the proceeds from the sale of estate assets first to the trust fund portion of the Withholding and FICA taxes due. If the debtor's motion is granted, the provision for the allocation of the payment of tax claims would operate to reduce the amount collectible from John G. Royal, personally to the extent the tax payments are actually made by the debtor.

## LAW

### *"Trust Fund" Taxes*

Under the Federal Insurance Contributions Act, 26 U.S.C. § 3101, *et seq.*, and the federal income tax laws, 26 U.S.C. § 3401, *et seq.*, employers are required to withhold federal income and Federal Insurance Contributions Act (FICA) taxes from the wages paid to their employees and to pay the amounts withheld to the Internal Revenue Service on at least a quarterly basis. 26 U.S.C. §§ 3102(a), 3402(a). Pursuant to 26 U.S.C. Section 7501(a) of the Internal Revenue Code of 1986, the amounts so withheld are deemed to be held in trust for the benefit of the United States, *Kizzier v. United States*, 598 F.2d 1128 (8th Cir.1972), and thus are often referred to as "trust fund" taxes. *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). If the employer withholds these taxes but fails to pay them over to the United States, the employee is nevertheless credited with having paid the taxes, and the government may not require any additional payment from the employees. Thus, unless the government has recourse against the person responsible for the collection and non-payment of the taxes, the revenues are lost to the government. *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978); *Maggy v. United States*, 560 F.2d 1372 (9th Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978); *Emshwiller v. United States*, 565 F.2d 1042, 1044 (8th Cir.1977).

In order to maximize tax revenues, Congress has imposed personal liability on the corporate officers and directors who are "responsible persons" for the collection and payment of "trust fund" taxes. See *Matter of Ribs–R–Us, Inc.*, 828 F.2d 199 (3d Cir.1987); *Matter of A & B Heating and Air Conditioning*, 823 F.2d 462 (11th Cir. 1987), *vac'd and rem'd for consideration of mootness question*, — U.S. —, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988); *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987). Section 6672 provides that "[a]ny person required to collect,

truthfully account for, and pay over any tax * * * who wilfully fails to collect such tax, or truthfully account for and pay over such tax" shall be personally liable to the United States for the full amount of the taxes not collected or paid to the United States. The unpaid trust fund taxes are only collected once by the Internal Revenue Service, whether collected in part or in whole from each responsible person and/or the corporate employer. *See, USLIFE Title Insurance Co. v. Harbison,* 784 F.2d 1238, 1243 (5th Cir.1986).

If the Debtor were allowed to designate the allocation of payments, it would no doubt require the IRS to apply its tax payments first to the trust fund portion of its tax liabilities in order to reduce the individual's personal liability. The IRS on the other hand, would like the payments to apply first to the non-trust fund taxes due the government because this method of collection increases the government's opportunity to recover in full the taxes due by giving it an additional source for collection of the trust fund taxes (the responsible party), and in fact, this is the IRS stated policy. *In re Technical Knockout Graphics, Inc., supra* at 799; *In re Ribs–R–Us, Inc., supra* at 201; *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983); *United States v. DeBeradinis,* 395 F.Supp. 944, 952 (D.Conn.1975), *aff'd,* 538 F.2d 315 (2d Cir.1976). *See,* Policy Statement P–5–60, IRS Manual (May 30, 1984). This policy is consistent with the purpose of Section 6672 liability—to encourage responsible persons to withhold the taxes that are collected from employees' wages in trust and to see that the withheld taxes are paid over to the government when they are due. It is also consistent with the purpose of the rule allowing a debtor to designate application of a payment only when he makes a voluntary payment—to encourage debtors to make voluntary payments. *In re Avildsen Tools & Machine, Inc.,* 794 F.2d 1248, 1251 (7th Cir.1986); *Muntwyler v. United States, supra,* at 1032.

### Voluntary or Involuntary

■ The crucial distinction in determining whether the taxpayer has the right to direct allocation of tax payments to certain tax liabilities is whether the payment is "voluntary" or "involuntary". In general, when a taxpayer submits a voluntary payment to the IRS, he is entitled to designate the tax liability to which the payment will be applied. *In re Technical Knockout Graphics, Inc., supra,* at 799; *In re Ribs–R–Us, Inc.,* at 201; *Muntwyler v. United States, supra,* at 1032; *In re Professional Technical Services, Inc.,* 80 B.R. 157 (Bkrtcy.E.D.Mo.1987). This rule is in accord with the rule generally recognized between creditors and debtors, that the debtor may indicate which debt he intends to pay when he voluntarily submits a payment to his creditor, but may not dictate the application of funds that the creditor involuntarily collects from him. *See, National Bank of the Commonwealth v. Mechanic's National Bank,* 94 U.S. 437, 24 L.Ed. 176 (1877); *Muntwyler v. United States, supra,* at 1032; *O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir.1964). In the absence of a designation or agreement as to how tax payments are to be applied, the IRS may apply the payment received against any amount owed as it sees fit. *In re Tom LeDuc Enterprises, Inc., supra,* at 902; *United States v. DeBeradinis, supra; In re B & P Enterprises, Inc.,* 67 B.R. 179, 182 (Bkrtcy.W.D.Tenn.1986).

The cases have uniformly adopted the definition of involuntary payments enunciated in *Amos v. Commissioner,* 47 T.C. 65, 69 (1966). It provides that:

An involuntary payment of federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefore.

Voluntariness is not solely determined by the presence of administrative action,[1] "but

---

1. The court in *Muntwyler v. United States, supra,* at 1032–33 defined involuntary payment as "one made pursuant to judicial action or some form of administrative seizure."; *See also, In re*

*Mister Marvins, Inc.,* 48 B.R. 279, 281 (E.D.Mich. 1984) (distinction between voluntary and involuntary payment is existence or non-existence of some form of court action); *United States v.*

rather the presence of court action or administrative action resulting in an actual *seizure* of property or money as in a levy". *Muntwyler v. United States, supra* at 1033. (emphasis in original). The slightest actions to collect taxes, such as filing a claim, or telephoning or writing the debtor to inform him of taxes due, do not in themselves make a payment involuntary. *Id.*

The circuit courts differ on how payments made in bankruptcy are viewed.[2] Some courts follow the view that all payments made in bankruptcy are involuntary, and therefore the debtor is unable to designate the allocation of the funds. *In re Technical Knockout Graphics, Inc., supra*[3] (tax payment made by debtor after filing voluntary Chapter 11 petition, but prior to confirmation of reorganization plan, are involuntary); *In re Ribs–R–Us, Inc., supra* (payments of taxes by a debtor on pre-petition priority tax liabilities pursuant to confirmed plan of reorganization are involuntary); and *In re Du Charmes & Co.*, 852 F.2d 194 (6th Cir.1988). The basis for these decisions rests on the debtor's lack of control of payments after he has filed bankruptcy and of the administrative, court-controlled nature of the disbursement of a debtor's funds. These cases state that, because of the last—resort nature of bankruptcy, it is exactly the type of action which under *Amos* should be considered involuntary, especially where the debtor liquidates its assets merely using bankruptcy as a vehicle for allowing such liquidation to be done in an orderly manner.

Another court says payments in bankruptcy made pursuant to a plan or reorganization are always voluntary. *In re Professional Technical Services, Inc.*, 80 B.R. 157 (Bkrtcy.E.D.Mo.1987). The court in this case, recognized that although debtors in bankruptcy are restricted, Chapter 11 offers them a full spectrum of opportunities for creditor treatment.

And still other courts maintain that whether payments made during bankruptcy are voluntary or involuntary depends on the totality of the circumstances and should be left to judicial discretion. *In re A & B Heating & Air Conditioning, Inc., supra*. In *In re A & B Heating & Air Conditioning, Inc., supra*, the Court set out some factors to consider when determining whether payments made during the pendency of a bankruptcy are voluntary or involuntary. Citing *In re B & P Enterprises, Inc., supra*, the Eleventh Circuit held that in making this determination the bankruptcy court is to consider the following factors:

1. The history of the debtor.
2. The absence or existence of pre-bankruptcy collection or enforced collection measures of the IRS against the corporation and responsible corporate officers.
3. The nature and contents of a Chapter 11 plan (e.g., last resort liquidation or reorganization).
4. The presence, extent and nature of administrative and/or court actions.
5. The presence of pre-bankruptcy or post-bankruptcy agreements between the debtor (or trustee) and the IRS.
6. The existence of exceptional or special circumstances or equitable reasons warranting such allocation.

*See also, Hineline v. Household Finance Corp.*, 72 B.R. 642 (N.D.Ohio 1987).

Although the bankruptcy court in the Eastern District of Missouri in *In re*

*DeBeradinis, supra,* at 952 (holding that payments were involuntary when "they resulted from Internal Revenue levies or participation in litigation"); *Monday v. United States,* 342 F.Supp. 1271, 1275 (E.D.Wis.1972), *aff'd,* 478 F.2d 1404 (7th Cir.1973), *cert denied,* 414 U.S. 910, 94 S.Ct. 233, 38 L.Ed.2d 148 (1973); *In re Obie Elie Wrecking Co.,* 35 B.R. 114 (Bkrtcy.N.D. Ohio 1983).

**2.** Courts in general disagree on whether payments made to the IRS by a debtor in bankruptcy may be allocated to pay one debt or another. For a list of cases regarding this subject *see,*

*Matter of A & B Heating and Air Conditioning,* 823 F.2d 462, 463, n. 2 (11th Cir.1987); *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 802, n. 1 (9th Cir.1987).

**3.** The court in this case stated that payments made by a debtor in possession after filing a petition for reorganization under Chapter 11, but prior to confirmation of a reorganization plan, are involuntary and the bankruptcy court does not even have equitable jurisdiction to order otherwise. *Id.,* at 802.

*Professional Technical Services, Inc.*, 80 B.R. 157 (Bkrtcy.E.D.Mo.1987), held that payments in bankruptcy are always voluntary, this Court is bound by the District Court decision in *In re Tom LeDuc Enterprises, Inc.*, 47 B.R. 900, 902 (W.D.Mo. 1984). The Court in that case followed the view that the determination of whether payments are made voluntarily or not is to be decided by a review of all the circumstances. *In re Tom LeDuc Enterprises, Inc.*, 47 B.R. 900, 902 (W.D.Mo.1984). Although the Court in that case relied heavily upon an agreement between the debtor and the IRS to find that the payments in question were voluntary, the court stated that the determination of whether a payment is voluntary or not involves an "examination of the specific facts of each case not just an examination of whether or not the payment was made while the payee was in bankruptcy." *Id,* at 902 *relying on, In re Avildsen Tools and Machines*, 30 B.R. 911, 917 (Bkrtcy.N.D.Ill.1983) which was later reversed due to breach of bankruptcy settlement by the debtor. It is this Court's view that such factors do not determine whether a debtor "deserves" to be allowed to designate payments to the IRS, but rather finds these factors to be determinative of whether the payments are voluntary or involuntary. *Cf. In re Professional Technical Services, Inc.,* 80 B.R. 157, 159–60 (Bkrtcy.E.D.Mo.1987).

## DISCUSSION

█ There has been no levy, distraint or actual seizure of funds by the IRS in this case; nor has there been an agreement between the IRS and the corporate debtor or John Royal regarding payment of these taxes. However, the estate has been liquidated and no plan has been confirmed. Additionally, debtor has failed to demonstrate any exceptional or special circumstances or equitable reasons warranting allocation of its payments to the IRS (release of the responsible person's liability is not a circumstance warranting such allocation).

One additional factor influences this Court's decision herein. The debtor's property at the commencement of the case, as well as certain funds acquired by the debt-or after bankruptcy, become property of the estate. 11 U.S.C. § 541(e). The debtor-in-possession is not free to deal with this property as he chooses, but holds it in trust for the benefit of creditors, standing in the shoes of a trustee "in every way". S.Rep. No. 95–989, 95th Cong., 1st Sess. at 116, *reprinted* in [1978] 5 U.S.Code Cong. & Ad.News 5787, 5902; 11 U.S.C. § 1107. Upon the filing of a petition in Chapter 11, the debtor-in-possession assumes the duties of a trustee, 11 U.S.C. § 1107, and thus has the status of a fiduciary for the benefit of creditors. See *Wolf v. Weinstein,* 372 U.S. 633, 649–50, 83 S.Ct. 969, 979–80, 10 L.Ed. 2d 33 (1963).

If Royal designates funds be paid to eliminate his liability first, he is breaching his fiduciary duty, as debtor-in-possession, to the debtor corporation. The best interest of the corporation would be to apply the funds to its non-trust fund liability first, leaving the IRS an alternative source for the trust fund debt. Royal is acting in his fiduciary capacity for the corporation and thus he has a conflict of interest between his own interest (reducing his personal liability) and the corporation's interest (having an alternate source to pay off its debts). Because of this conflict, this Court finds it inappropriate for Royal, individually, to be making the designation of payments for the corporate debtor, where there has never been a plan confirmed and other parties in interest have never been advised of debtor's intention and desire to extricate its former principal.

For these reasons, this Court determines that payments made by the debtor to the IRS are involuntary in this case and, therefore, the IRS may decide how the payments will be allocated and the debtor will not be allowed to direct the payments.

The foregoing constitutes Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.