**In re ABA RECOVERY SERVICE, INC., dba Bay Park Towing, Golden State Towing, Debtor.**

**Bankruptcy No. 86–04700–LM11.**

United States Bankruptcy Court, S.D. California.

Jan. 31, 1990.

James P. Hill, Hill & MacKinnon, San Diego, Cal., for trustee.

David L. Buchbinder, San Diego, Cal., for Marcelle Egley, movant.

Thomas Dombrowski, District Counsel, I.R.S., San Diego, Cal., for IRS.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

The question before the Court is whether the trustee may direct allocation of payments made to the IRS on post-petition trust fund tax liabilities incurred during the Chapter 11 case. Upon due consideration, the Court finds she has authority to permit the trustee to do so where excep-

tional or special circumstances exist, or it would be equitable to do so.

The Court has jurisdiction to hear this case pursuant to 28 U.S.C. Section 1334, 28 U.S.C. Section 157(b)(1), and General Order 312–D of the United States District Court, Southern District of California. This is a core matter pursuant to 28 U.S.C. Section 157(b)(2)(A).

## FACTS

The debtor, ABA Recovery Service, Inc., was operated by its president, Richard Egley, from the time of filing of the petition, July 24, 1986, until May 22, 1987, at which time Harold Taxel was appointed trustee. During Mr. Egley's administration of the debtor-in-possession, the estate incurred federal trust fund tax liabilities.[1] Likewise, the trustee incurred trust fund tax liabilities during his administration of the estate.

The operating reports show that the business was not profitable either before or after the trustee's appointment. During the trustee's tenure, the landlord issued several notices of default when rent or real property taxes were not timely paid. When the trustee was faced with a choice between paying the trust fund taxes on the one hand, which meant forfeiting the lease and all chance of payment to creditors, or paying the rent to preserve the lease and accruing liability to the Internal Revenue Service ("IRS"), he chose the latter.

In order to extricate the debtor from its financial woes, the trustee entered into negotiations with an entity called The Office Club for a sublease of the debtor's business premise. On March 29, 1989, the Court authorized the trustee to enter into a long-term sublease agreement with The Office Club. The terms of the sublease provided for The Office Club to pay both the underlying base rent to the Debtor's landlord plus a sizeable differential to the estate. Additionally, the sublease agreement

---

1. Pursuant to the Federal Insurance Contribution Act, 26 U.S.C. Section 3101, and the federal income tax laws, 26 U.S.C. Section 3401, employers are required to withhold federal income and Federal Insurance Contribution Act taxes from their employees' wages. The amounts withheld are held for payment to the Internal Revenue Service. The amounts withheld are deemed to be held in trust for the benefit of the United States pursuant to 26 U.S.C. Section 7501(a).

required the trustee to bring current all obligations, including property taxes, then due under the lease.

On April 22, 1989, the IRS filed a request for payment of taxes as an administrative expense. On May 29, 1989, the Court approved a loan from The Office Club to the trustee for up to $125,000 for the express and limited purpose of paying post-petition taxes. The trustee used the loan proceeds to pay both real property taxes due under the lease and payroll tax obligations which were due.

After satisfying these obligations, the trustee had only enough money on hand to satisfy that portion of the trust fund tax liability incurred during his tenure but not that incurred during Egley's tenure. Now the trustee seeks court approval to direct the IRS to allocate the payment of the remaining loan proceeds and future sublease payments to the post-petition trust fund taxes incurred during his tenure. Denial of this request will result in the trustee remaining exposed to potential personal liability for an amount equal to the unpaid trust fund taxes.

## ISSUE

Whether the trustee may direct allocation of the payment of trust fund taxes

incurred post-petition to the taxes incurred during his administration of the estate.

## DISCUSSION

### I. *Designation of Payments*

■ The problem presented appears to be one of first impression in the Ninth Circuit. No prior reported cases have confronted the issue of whether a trustee can direct the IRS to allocate payments made to reduce post-petition trust fund tax liabilities.[2] Reported tax allocation cases have dealt with the propriety of post-petition allocation of payments on pre-petition trust fund and non-trust fund tax debt.[3]

The Ninth Circuit has held in *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797 (9th Cir.1987) (*"TKO"*), that payments made post-petition on pre-petition tax liabilities prior to plan confirmation are involuntary.[4] As such, the debtor may not direct the allocation of payments between non-trust fund and trust fund tax liabilities.

In *TKO,* the court concluded that a policy that favored the debtor's principals to the possible detriment of creditors was unacceptable:

Thus, by filing a bankruptcy petition under Chapter 11, TKO used the authority of the court to keep its creditors at bay

**2.** The Court in *In re Jehan-Das, Inc.,* 91 B.R. 542 (Bankr.W.D.Mo.1988) was confronted with the issue of the debtor's ability to direct post-petition the payment of post-petition trust fund liabilities. In deciding whether the debtor possessed such ability, the court considered whether there existed "any exceptional or special circumstances or equitable reasons warranting allocation of ... payments to the IRS (release of the responsible person's liability is not a circumstance warranting such allocation)." *Id.* at 546.

Upon such consideration, the court found that no special circumstances existed which would justify allowing the debtor to direct how the IRS would allocate his payments.

**3.** *See, e.g., In re Technical Knockout Graphics, Inc.,* 833 F.2d 797 (9th Cir.1987); *Matter of Ribs-R-Us, Inc.,* 828 F.2d 199 (3rd Cir.1987); *Matter of A & B Heating and Air Conditioning,* 823 F.2d 462 (11th Cir.1987), *vac'd and rem'd for consideration of mootness question,* 486 U.S. 1002, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988); *Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983).

**4.** To determine whether a payment is voluntary or involuntary, courts have turned to the definition of involuntary payments announced in *Amos v. Commissioner,* 47 T.C. 65, 69 (1966). In *Amos* the Tax Court stated that:

An involuntary payment of federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefore.

If labeled "voluntary," the debtor would allocate its payments to the trust fund portion of the tax in order to relieve the debtor's principal of personal liability. On the other hand, if labeled "involuntary," the IRS will first apply any payments received to the non-trust fund portion (interest and penalties) due. Because the individual responsible on the debtor's behalf for collecting such taxes is personally liable for their non-payment, the IRS' policy of applying involuntary payments to the non-trust fund portion increases its likelihood in collecting the full amount of taxes owed from the responsible person.

while it reorganized and regained financial stability. TKO is not free to abuse this system by designating its payments in a way that benefits only its responsible persons, and possibly harms other creditors, including the IRS, without the scrutiny of the court or other creditors. *Id.* at 803.

The IRS argues that the *TKO* rationale applies to the present dispute. They assert that to permit the trustee to direct the allocation of tax payments for which he can be held personally liable is the sort of self-dealing which is inconsistent with his fiduciary obligation to the estate and the creditors.

This Court disagrees that *TKO* controls this decision. First, *TKO* dealt with post-petition payment of pre-petition tax liabilities. This case involves post-petition payment of post-petition liabilities. Second, *TKO* involved both trust fund and non-trust fund taxes. This case involves only trust fund taxes.

The trustee contends that it would be inequitable to leave him exposed to personal liability for delinquent trust fund taxes while reducing the liability of the debtor's principal, Richard Egley. To do so, the trustee argues, will impact upon the future actions of Chapter 11 trustees:

> If Richard Egley's position is adopted, it would send a clear message to Chapter 11 trustees that should they ever fail to pay or be late in paying withholding taxes to the IRS, then they may never be able to catch up as they will have to pay all of the debtor in possession's tax liabilities first. Such a ruling would also act as a powerful incentive to Chapter 11 trustees to immediately seek conversion of bankruptcy cases to cases under Chapter 7 to ensure that any debts incurred by the trustee will have priority over the post-petition debts of the debtor in possession. (Trustee's Memorandum of Points and Authorities, filed August 14, 1989, p. 7, ll. 6–16).

This Court finds that it possesses the equitable jurisdiction to determine whether the trustee will be allowed to direct how the IRS applies payments made on post-petition tax liabilities. As a court of equity, it is incumbent upon the bankruptcy court to determine if there exist "any exceptional or special circumstances or equitable reasons warranting allocation of ... payments to the IRS." *In re Jehan–Das, Inc.*, 91 B.R. 542 (Bankr.W.D.Mo.1988). I conclude that exceptional and equitable reasons do exist which warrant allowing the trustee to allocate payments to the IRS.

Equitably it is unjust to exonerate Mr. Egley while continuing to expose the trustee to the potential of personal liability for these taxes. The record of this case demonstrates that Mr. Egley did nothing at all to benefit the estate. Under Bankruptcy Code Section 1107, the debtor-in-possession assumes the duties of a trustee. In this position, the debtor-in-possession undertakes the trustee's obligation to hold the property of the estate in trust for benefit of all creditors. *In re Woodson*, 839 F.2d 610, 614 (9th Cir.1988). As manager of the debtor-in-possession, Mr. Egley failed in his obligation to act in the best interest of creditors. During Egley's management, he failed to timely pay payroll taxes and property taxes. Further, Mr. Egley failed to timely pay rent for every month in which he served as manager of the debtor-in-possession and, at one point, due to his inattention, came dangerously close to forfeiting the debtor's lease.

As a result of Mr. Egley's failure to act in the best interest of the estate and its creditors, this Court appointed Harold Taxel as trustee. Mr. Taxel negotiated and obtained approval of a long-term sublease of the debtor's premises, brought current all rental obligations and thereafter timely paid rent, and satisfied all preexisting property taxes. Mr. Taxel has revived and rehabilitated this estate to the point where it now has a viable prospect of reorganization. All creditors, including the IRS, should receive a higher percentage payment on their pre-petition claims as well as full payment of their post-petition claims due to Mr. Taxel's efforts to preserve the lease at some risk to himself.

Accordingly, after examining the debtor's administration by both Mr. Egley and

by Mr. Taxel, the Court finds that it is equitable for Mr. Taxel to direct allocation of the remaining loan proceeds and future sublease payments to the reduction of those post-petition trust fund taxes incurred during his tenure.

## II. *Premature Motion*

The IRS argues that this motion is premature because the IRS has not made any claim against the trustee personally for the trust fund taxes incurred by the trustee. However, the Court is mindful of the IRS' long standing collection policy regarding allocation of partial payments of federal taxes. The IRS will apply any partial payment as it desires, absent specific instructions by the taxpayer. The IRS will not, however, honor an allocation instruction if it views the payment as resulting from enforced collection measures or it deems the partial payment to be involuntary. *See*, IRS Policy Statement P–5–60, IRS Manual (May 30, 1984).

There is no statutory authority for the IRS' policy of allocating involuntary payments first to a corporate debtor's non-trust fund tax liability. It is an internal rule designed to increase the likelihood that the government will ultimately collect all taxes owed. However, as a general matter, the IRS cannot circumscribe a court's statutory powers by using an internal rule. *See Dixon v. United States*, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965).

Here, the IRS argues that *TKO* classifies any payment on taxes made during a Chapter 11 bankruptcy as subject to judicial supervision and, therefore, not considered voluntary. For reasons explained above, this Court disagrees with this broad construction of the *TKO* holding. The Court has no doubt that the IRS will pursue the trustee personally in the event the trust fund taxes incurred during the trustee's tenure are not paid in full. By this ruling, the Court does not circumscribe that right. However, an allocation instruction contained in a court order made in advance of any undertaking by the IRS to enforce collection measures against the trustee will clearly protect his right to direct allocation in the face of this expressed position.

## III. *Egley's Contentions*

■ Mr. Egley alleges that the trustee violated his fiduciary responsibility to pay the payroll taxes owed. He claims that he faces the loss of his home to the IRS for these post-petition payroll taxes incurred prior to the trustee's appointment. Egley alleges that the trustee's motion to allocate taxes is for the sole purpose of protecting only the trustee. The Court notes, that a debtor cannot force the trustee to pay taxes accrued during the debtor-in-possession's tenure. *In re Major Dynamics, Inc.*, 59 B.R. 697, 702 (Bankr.S.D.Cal.1986). The trustee's responsibility is to preserve and maximize the value of the estate for the benefit of the parties in interest, and not to safeguard the interest of the debtor's principals.

As previously discussed, it would be unjust to leave the trustee personally liable for a non-dischargeable tax liability while exonerating the debtor's principal, whose actions did nothing to benefit the estate. Accordingly, Mr. Egley's assertions are without merit.

## CONCLUSION

In summary, the Bankruptcy Court retains the power to direct the payment of taxes incurred post-petition. The Court does so under its inherent power to equitably control the administration of the estate. Although in some situations this may increase the risk of the IRS collecting the total administrative tax obligation of the estate, the IRS has submitted no evidence in this case demonstrating that the risk of non-payment will be increased by permitting allocation as directed.

Further, in this instance, to do otherwise would benefit the principal of the Chapter 11 estate, at the expense of the trustee. This would thwart the efficient administration of Chapter 11 cases. Trustees put in similar situations will practice defensive management of Chapter 11 estates and be unwilling to take informed risks that are calculated to increase the potential of pay-

ment of creditors' claims. In the absence of a clear expression by Congress, balancing of the competing interests of the Internal Revenue Service in collecting taxes and the Bankruptcy Court in efficient estate administration should be left to judicial discretion.

Therefore, it is ordered that the Mr. Taxel is permitted to direct allocation of the post-petition payments to the IRS to first reduce the post-petition trust fund taxes incurred during his tenure. Counsel for the Mr. Taxel is directed to prepare an order in conformance with this Memorandum Decision within ten (10) days from the date of its entry.