# In re EDUCARE CENTERS OF ARKANSAS, INC.

## Bankruptcy No. FS 87–446 S.

United States Bankruptcy Court, W.D. Arkansas, Fort Smith Division.

Aug. 2, 1989.

Thomas Robertson, Ft. Smith, Ark., for debtor.

Mark Webb, Asst. U.S. Atty., Ft. Smith, Ark., for IRS.

John Allen Lewis, Ft. Smith, Ark., for Lloyd and Shirlene Schuh.

Ken Cowan, Ft. Smith, Ark., trustee.

## ORDER SUSTAINING IRS OBJECTION TO CONFIRMATION

MARY D. SCOTT, Bankruptcy Judge.

The matter before the Court is an Objection to Confirmation of a Chapter 11 plan. The plan, which is a liquidating plan, was filed by the Trustee appointed in this case to replace the owners/managers. The Objection to Confirmation has been filed by the Internal Revenue Service (IRS).

A response to this Objection to Confirmation has been filed by the debtor's sole shareholders, Lloyd Schuh and Shirlene Schuh. These individuals were the owners/managers replaced by the Trustee. The Trustee, although the proponent of the plan, has not filed a response. The matter came on for hearing June 27, 1989. The parties advised the Court that they would present no testimony, but would submit the matter on pleadings and briefs.

This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1334. Moreover, the Court finds that it is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified in 28 U.S.C. § 157(b)(2)(B) and (L).

The IRS makes the following assertions:

1. On December 2, 1987, the above-named debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code by filing a petition under said chapter.

2. On or about May 5, 1988, the United States of America, Internal Revenue Service, filed a proof of claim for unpaid taxes, interest, and penalties in the amount of $50,357.11, incurred as an administrative expense in the proceeding.

3. On or about July 8, 1988, the United States of America, Internal Revenue Service, filed a proof of claim for unpaid employment taxes, interest, and penalties in the amount of $159,163.60.

4. The United States of America, Internal Revenue Service, is an unsecured priority claimant pursuant to 11 U.S.C. § 507(a)(7) with respect to the taxes and interest referred to in paragraph 3.

5. Under Article 2.1(c) and (d) of the proposed plan the unsecured priority claim of the Internal Revenue Service would be divided into two classes: Class 3 consisting of the trust fund portion of the employment tax claim representing withheld employee FICA and income taxes and Class 4 consisting of the non-trust fund portion (employer's portion of the employment tax claim). The plan states that each class is impaired.

6. Under Article 3.3. of the proposed plan the Class 3 trust fund portion of the federal employment tax claim would be paid as soon as practicable after the effective date of the plan and under Article 3.4 the non-trust fund portion of the federal employment tax claim would not be paid until after the trust fund portion has been completely satisfied.

7. Article 4.1 of the proposed plan states the trustee shall implement the plan by liquidating all the remaining property of the debtor which consists of real property in Little Rock, Arkansas, secured by a mortgage in favor of the City National Bank of Fort Smith, Arkansas. The trustee intends to distribute all funds available according to the priorities set forth in 11 U.S.C. § 507 and, after satisfaction of administrative claims and wage claims, all remaining funds will be distributed first to allow priority claims for taxes in Class 3 through 5 and all remaining funds held by the trustee will be distributed first to the Class 6 secured creditor up to the value of its collateral. Any remaining funds are to be distributed pro rata for the claims of unsecured creditors.

8. By designating the first payments on the federal employment tax claim as pay-

ments on the trust fund portion of such claim, the debtor is attempting to deprive the United States of its right to designate an involuntary tax payment in its best interest to the employer's portion of the employment tax claim, thereby affording an additional source for collection of the trust fund taxes from the responsible officers of the debtor who failed to pay over such tax. The debtor does not have the right to make such a designation of its involuntary tax payments. *In Re: DuCharmes & Co.*, 852 F.2d 194 (6th Cir.1988) and *In Re: Professional Technical Services, Inc.*, 94 B.R. 578 (E.D. Mo.1988); 89-1 USTC para. 9145 and cases discussed therein.

9. The United States objects to the debtor's plan of liquidation to the extent that the debtor would designate its involuntary tax payments to be applied first to the employment tax debt from which a "trust fund" tax assessment has been made against the responsible officers of the debtor.

The Response filed by the Schuhs is as follows:

1. The Schuhs admit that the debtor commenced a bankruptcy filing in this case pursuant to Chapter 11 of the United States Code on December 2, 1987.

2. The Schuhs admit that there is some monies owing the IRS but have substantial questions concerning the proof of the claim filed of record on May 5, 1988, in the amount of $50,307.11, and the proof of claim filed on July 8, 1988.

3. The Schuhs agree with the IRS that they are an unsecured priority claimant pursuant to 11 U.S.C. § 507(a)(7) with respect to the taxes and interest reflected on Exhibit "B" to the IRS' objection.

4. The Schuhs submit to this Court that the debtor does have the right to designate first payments on federal employment tax claims in satisfaction of the trust fund portion of such claims pursuant to several cases which have been decided over the past few years. [citations omitted]

The decision concerning whether or not the debtor may designate allocational payments is a question of law and is not an issue for the exercise of the Bankruptcy Court's discretion. Public policy, however, dictates that debtors, to the greatest extent possible, be given a "fresh start" with reference to obligations which they may be liable for under other applicable statutes. There is no convincing or compelling policy reason why the debtors should not be allowed to allocate payment in that substantial portion, if not all, of the assets which the debtor currently holds will be allocated to payment of the United States Government taxes.

The IRS filed the following Reply to the Schuh's response:

1. That Lloyd and Shirlene Schuh as sole shareholders of Educare Centers of Arkansas, Inc. lack standing to litigate the issues in the objection by the United States of America, Internal Revenue Service, which concern the trustee's attempt to designate the payment to the trust fund tax liability.

2. That the Schuhs' individual liability under Section 6672 of the Internal Revenue Code is separate and distinct from and in addition to the tax liabilities imposed upon Educare Centers of Arkansas, Inc., the debtor in this case.

3. It is an established principle that an individual cannot litigate the tax liability of another. [citations omitted]

Initially the Court notes that the Schuhs, not the proponents of the plan, are responding to the government's objection, and that the government has raised the issue of whether they have standing to even offer a response. Because the Objection of the government is sustained for other reasons as hereinafter set out the standing issue will not be specifically addressed.

I am aware of the split of authority in the circuits with regard to the issue raised by the parties. The most recent decision from the First Circuit in *In Re Energy Resources Co., Inc.*, 871 F.2d 223 (1st Cir. 1989) restates the issues which resulted in

the conflict in the circuits. I agree with the conclusions of the First Circuit and believe that the issue should be decided on a case-by-case basis. The Eighth Circuit has not, to date, considered the issue.

At the outset the First Circuit states the question and the conflict

In our view, these cases require us to answer two legal questions. The first legal question concerns the scope of IRS policy. It is whether a payment made pursuant to a Chapter 11 reorganization plan is "voluntary" or "involuntary," as IRS rules and regulations use these terms. Our answer to that question is similar to that of the Third Circuit. We believe that the law permits the IRS to call tax payments within a Chapter 11 reorganization "involuntary," for purposes of applying its own regulations. We reach a result that differs from the Third Circuit, however, because we believe we must ask a second question: Does the law permit a bankruptcy court to order the IRS to allocate an "involuntarily" made payment to a debtor's "trust fund" tax liability first? We conclude that the law does authorize a bankruptcy court to order the IRS to allocate such "involuntary" payments to a taxpayer's "trust fund" liability first, provided that the court reasonably concludes that this allocation will likely increase the reorganization plan's chances for success.

The Court, however, avoided the issue of whether the payments are classified as "voluntary" or "involuntary."

The basic legal question that these two cases raise on appeal is whether the bankruptcy court has the legal authority to order the government to apply the tax payments made by the reorganized corporation to the corporation's "trust fund" debts first. We conclude that the bankruptcy court does possess that legal power, regardless of whether the payments are characterized as "voluntary" or "involuntary." Our result is consistent with that of the Eleventh Circuit in *In Re A & B Heating & Air Conditioning, Inc.*, 823 F.2d 462 (11th Cir.1987),

vacated and remanded for consideration of mootness, — U.S. —, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988). Our result is not consistent with that reached by the Third Circuit, in *In Re Ribs–R–Us, Inc.*, 828 F.2d 199 (3rd Cir.1987) (tax payments made pursuant to a Chapter 11 reorganization are per se "involuntary" and "no provision of the Bankruptcy Code allows either the debtor or the bankruptcy court to direct" the allocation of such payments). Two other circuits have followed the Third Circuit. *In Re DuCharmes & Co.*, 852 F.2d 194 (6th Cir. 1988) (per curiam); *In Re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987).

Because of the substantial conflict among the circuits, the First Circuit spent considerable time on a discussion of the bankruptcy court's broad powers.

A central legal question remains: Does a bankruptcy court possess the legal power to order the IRS to apply a payment in a way that runs counter to IRS's own internal policies? That is to say, may a bankruptcy court order the IRS to apply an "involuntary" payment made by a Chapter 11 debtor to "trust fund" tax liabilities first, and only later apply payments to ordinary, non-trust fund tax liabilities? Compare *In Re A & B Heating & Air Conditioning*, 823 F.2d at 465 (noting tension between Internal Revenue Code's aim to "maximize the public fisc" and the Bankruptcy Code's "preference toward reorganization rather than liquidation"). We conclude that the answer to this question is "yes," for several reasons.

First, Congress has granted bankruptcy courts broad equitable powers, including those powers "expressly or by necessary implication conferred by Congress." *Johnson v. First National Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir. 1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); see also *Pepper v. Litton*, 308 U.S. 295, 304–05, 60 S.Ct. 238, 244, 84 L.Ed. 281 ("The bankruptcy courts have exercised these equitable powers in passing on a wide variety of problems arising out of the

administration of bankrupt estates."); *In Re Leasing Consultants, Inc.,* 592 F.2d 103, 107 (2d Cir.1978) (bankruptcy court sits in equity); 11 U.S.C. § 1129(b)(1) ensure that reorganization plan is "fair and equitable". And historically, bankruptcy courts have been called upon to use their powers to promote the "twofold" (and often conflicting) purpose of the Bankruptcy Code: ensure fair payment to creditors and provide the bankrupt firm with an opportunity to make a "fresh start." *Burlington v. Crouse,* 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920 (1913). The bankruptcy court may "issue any order, process, or judgement that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105 (emphasis added). At least on some occasions, an order allocating Chapter 11 tax payments to "trust fund" liabilities first would seem "appropriate." Suppose, for example, that certain third parties that included "responsible" individuals were willing to advance enough money to rehabilitate the corporation only if the court would assure them that the reorganized corporation would pay its "trust fund" tax debts first. That assurance would diminish the likelihood that the third parties would have to pay the debts personally; without it they might prefer immediate liquidation, which could mean total payment of all tax debt, and "a guarantee[ ] that no tax penalty will be assessed against them personally." Note, *Bankruptcy Court Jurisdiction and the Power to Enjoin the IRS,* 70 Minn.L.Rev. 1279, 1299–1300 (1986).

The Court, in support of its conclusions, found that bankruptcy courts have long had the legal power to determine application of particular payments by a debtor with several debts owed to a single creditor. They also determined that there was nothing in the Bankruptcy Code limiting the bankruptcy court's power to allocate when the creditor is the IRS. The Court further found that it is unlikely that the IRS could easily balance on a case-by-case basis the increased tax collection risk against the increased likelihood of rehabilitation. Lastly, the First Circuit found that the IRS policy of allocating payments was just that, an agency policy, and not based on statute.

The facts in this case are at first glance confusing, but not insurmountably so. I believe the confusion stems from the fact that the Schuhs are separate debtors in their own individual bankruptcy case, which is not being considered along with the corporation's bankruptcy case either administratively or substantively. What they appear to be arguing for is their own fresh start after their bankruptcy case, a Chapter 7 straight liquidation, concludes. Since they are the sole shareholders and officers of the debtor corporation, they are, although they did not specifically so state, undoubtedly liable for the trust fund portion of these same employment taxes as "responsible persons" pursuant to Section 6672 of the Internal Revenue Service Code. 26 U.S.C. § 6672. As such, the more the corporation is able to pay to reduce this portion of the employment taxes, the less the Schuhs will have to pay. Since these tax debts in their individual bankruptcy case are nondischargeable, they understandably have a personal interest in the outcome of the IRS's objection to the Trustee's plan in the corporation's bankruptcy proceeding.

The IRS argues candidly as follows:

By proposing a plan of liquidation which proposes to pay off the trust fund tax liability first, the trustee forecloses the United States of America from applying the payments of the employment tax liability in the best interest of the United States of America. If the debtor fails to make all of the payments anticipated by the plan to the United States of America, the debtor will have shielded the responsible person from the Section 6672 liability up to the amount of the trust fund liability paid off by the debtor.

The Disclosure Statement filed by the Trustee reveals the history of this debtor. Educare was established in 1969 to provide child care and educational services and operated centers in three metropolitan areas of Arkansas. Unable to meet its financial

obligations, it filed a Chapter 11 case December 2, 1987. On July 21, 1988, a trustee was appointed pursuant to motion filed by creditors. The Trustee, after running the business for a time, concluded that continued operation was not feasible. Thus, he discontinued the business of Educare and, for all intents and purposes, is doing nothing more than he would do in a Chapter 7 liquidation. The Chapter 11 Trustee proposes to implement the plan he has submitted for this corporate debtor by liquidating all the debtor's property. In fact, paragraph 4.1 of the plan indicates that all of the debtor's assets have been liquidated with the exception of one piece of real property which is mortgaged.

Nothing in the Plan or Disclosure Statement reveals what dollars the trustee has on hand to distribute, but it can probably be safely concluded that not all of the taxes will be paid. Otherwise, there would be no need to propose an allocation of tax payments. Because the business is virtually liquidated, the IRS cannot look to future operations of Educare for payments. Whatever is paid to the government by the Trustee under the plan is all it will ever realize from this corporation.

■ I have read carefully the various circuit opinions and, as earlier noted, adopt the First Circuit position. The bankruptcy court, pursuant to its broad powers, may under certain appropriate circumstances order the government to apply the tax payments of the reorganized corporation to the corporation's "trust fund" debts first. This is so, regardless of whether the payments are characterized as "voluntary" or "involuntary."

■ The facts in this case, however, do not present such an occasion and would be wholly inappropriate. The simple fact is that the outcome of the Trustee's proposed plan is not a reorganized corporation. No one is attempting to rehabilitate this corporation. There is no likelihood that the proposed allocation will increase the reorganization of this corporation. Under the circumstances the IRS objection should be sustained.

Accordingly, it is hereby

ORDERED that the Objection to Confirmation is sustained. It is further

ORDERED that the Trustee modify the Chapter 11 plan in accordance with this decision within twenty (20) days of entry of this Order.

IT IS SO ORDERED.