**In re Stephen J. POLESHUK a/k/a Steven Powers, Debtor.**

**In re Bruce A. POLESHUK, Debtor.**

**Bankruptcy Nos. 89–01002–BKC–6C3, 89–01003–BKC–6C3.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

June 19, 1990.

---

William F. Lawless, Altamonte Springs, Fla., for debtors.

Richard A. Palmer, Winter Park, Fla., trustee.

Kendall Wherry, Asst. U.S. Atty., Orlando, Fla.

## ORDER ON DEBTORS' OBJECTIONS TO CLAIMS OF THE INTERNAL REVENUE SERVICE AND SCHEDULING CONFIRMATION HEARING

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

THESE CAUSES came on for hearing on March 27, 1990, of the objections filed by Stephen J. Poleshuk (Documents Nos. 43, 48, and 49) and Bruce A. Poleshuk (Documents Nos. 25 and 44) to claims in their respective Chapter 13 cases. The hearings were consolidated because the factual and legal issues are identical. In each case, the debtor has objected to the claim of the Internal Revenue Service on the ground that the IRS claim does not reflect a credit to the amount of taxes each owes for a payment made to the Service by Alpha Printing, Inc., a corporation owned and operated by the debtors. The claims asserted by the Service in the individual cases arise from a 100 per cent penalty assessed against them as responsible officers for the unpaid trust fund portion of Alpha's corporate tax obligations.

The court heard argument of counsel and considered the briefs submitted before and after the hearing. The court has also considered the file in *In re Alpha Printing Co.*, Case No. 89–00679–6X7, pending in this court. The debtors carry the burden of going forward with the evidence to rebut the presumed validity of the claims under Section 502(a) of the Bankruptcy Code. The Service, however, has the ultimate burden of establishing the validity of its claim by a preponderance of the evidence. *Rasmussen v. Gresly*, 77 F.2d 252 (8th Cir.1935); *In re Palm Investments of Pinellas County*, 2 B.R. 646, 649 (Bankr. M.D.Fla.1980).

The uncontested facts before the court can be simply stated:

The individual debtors here are principals and shareholders of Alpha Printing Company, Inc. Alpha and the individual debtors are each represented in this court by the same attorney.

On March 3, 1989, the debtors' corporation, Alpha, filed a petition in this court for relief under Chapter 11 of the Bankruptcy Code. On March 30, 1989, each individual debtor filed his Chapter 13 case. A week later, on April 7, 1989, Alpha caused a cashier's check in the amount of $7,700 to be issued to "Internal Revenue Service, payable to the trust fund account only." Alpha made the payment because it chose to do so, rather than because of any enforced collection procedures or the participation of the Service in the Alpha Chapter 11 bankruptcy case.

The tax or penalty assessed against the individuals was for Alpha's tax period ending September 30, 1988, which is some five months before Alpha filed its petition. The payment by Alpha, therefore, was a *post* petition payment of Alpha's *pre* petition tax obligation. That payment was made by Alpha without an order of this court in the Alpha Chapter 11 case authorizing either the expenditure on account of the *pre* petition tax obligation or the designation of the payment as one for trust fund taxes.

The Service received the Alpha check but did not allocate the payment to the trust fund portion of the corporate tax obligation. As a result, there was no reduction of the penalty assessed against the individual debtors.

On April 19, 1989, only 12 days after making the payment, the Alpha corporate

case was converted from Chapter 11 to a case under Chapter 7 of the Bankruptcy Code. The conversion was made pursuant to a notice of conversion filed by Alpha on April 7, 1989—the very day it made the payment.

Based upon those facts, the debtors here assert that the payment by Alpha should have been credited to the trust fund account because the payment was a voluntary payment on the part of Alpha. Under the Service's own internal rules, they say, such a payment must be allocated as directed by the corporation. In addition, the debtors contend that the court has the discretion, regardless of the voluntary nature of the payment, to decide and direct the allocation on a case-by-case basis. *See In re A & B Heating & Air Conditioning, Inc.*, 823 F.2d 462 (11th Cir.1987), *remanded on other grounds*, 486 U.S. 1002, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988), *reaffirmed*, 861 F.2d 1538 (11th Cir.1988).

The Service takes the position that the payment was an involuntary payment and, as such, Alpha was not entitled to designate the application of the payment. The Service cites numerous and substantial authorities for the proposition that a payment under a *confirmed* Chapter 11 plan is not a voluntary payment. In answer to the debtors' second contention, the Service asserts that the test provided in the Eleventh Circuit's *A & B Heating* opinion is not binding upon the court because the opinion was later vacated.

The *A & B Heating* analysis was adopted by the First Circuit in deciding *In re Energy Resources Co., Inc.*, which was pending before the Supreme Court at the time of the hearing of the instant cases. *See In re Energy Resources Co., Inc.*, 871 F.2d 223 (1st Cir.1989), *cert. granted*, — U.S. —, 110 S.Ct. 402, 107 L.Ed.2d 369 (1989). After the parties filed their briefs, the Supreme Court rendered its decision. *In re Energy Resources Co., Inc.*, — U.S. —, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

As a preliminary matter, the court first notes that the Supreme Court's decision in *Energy Resources* does not provide an answer to the debtors' objections here. The

issue framed by *Energy Resources* is whether the bankruptcy court has the discretion to direct the allocation of payments to the Service under the terms of a Chapter 11 plan. 11 U.S.C. § 1129(a)(11). The *Energy Resources* analysis begins with the premise that, in order to confirm a proposed Chapter 11 plan, the court must find that the reorganization will succeed and that the priority claims of the Service will be paid in full within six year from the date of assessment. 11 U.S.C. § 1129(a)(9)(C). In that context, the right to direct the allocation of payments merely determines which portion of the tax obligation is satisfied first.

That analysis is inapplicable to the facts presented here. Here there is no proposed Chapter 11 plan, and there is no evidence that the Alpha tax obligation was or will be paid in full. In fact, there is no proposed payment because the Alpha case has been converted to Chapter 7.

The task before this court is, then, not to direct the allocation of the payment made over a year ago by Alpha, but to determine whether, under its own rules, the Service was entitled to refuse to allocate the payment to the trust portion, thereby retaining the full amount of its claim against these individual debtors.

■ Generally, if a taxpayer directs the allocation of the payment among various taxes due, the Service must comply with the taxpayer's request. *Wood v. United States*, 808 F.2d 411, 416 (5th Cir. 1987). When the payment is involuntary, however, the Service may allocate the payment as it chooses. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983). Typically, the Service chooses to allocate such a payment to the non-trust portion so as to maximize the total potential recovery.

■ The extent of the claim of the Service against these debtors will therefore be determined by the voluntary or involuntary character of the payment made by Alpha. In support of their contention that the payment was voluntary, the debtors offer the fact that Alpha chose to make the payment

before conversion and that it was under no order or obligation to do so.

The Service, however, cites *United States v. Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987), in support of its contention that the payment was involuntary. In that case, the court examined the allocation of payments made after the Chapter 11 petition was filed but before confirmation of a plan—exactly the situation here. The *TKO* court held that such payments were involuntary: the Service was therefore entitled to apply the payment as it saw fit and to retain the right to pursue responsible persons under 26 U.S.C. § 6672. The court reasoned that, after filing bankruptcy to keep its creditors at bay, the debtor was not free to designate its payments in a way that benefited only its responsible officers and possibly harmed creditors, including the Service, without the scrutiny of the court and the creditors. *Id.* at 802–03. The *TKO* reasoning is persuasive.

The result reached in the *TKO* is required on these particular facts for an additional reason as well. If the payment to the Service had not been made just before conversion, then the Service would have been paid from the Alpha estate only as a result of a distribution by the Chapter 7 trustee. The majority of the courts considering the issue have determined that a payment by a Chapter 7 trustee to the Service is *not* a voluntary payment such that the debtor or the trustee may choose to direct the allocation of the payment. *See In re Leonard*, 112 B.R. 67 (Bankr.D.Conn.1990); *In re Vermont Fiberglass*, 88 B.R. 41, 43 (D.Vt.1988); *In re Office Dynamics, Inc.*, 39 B.R. 760, 762 (Bankr.N.D.Ga.1984). The individual debtors here avoided that result only by virtue of the unauthorized payment made in the Alpha corporate case the very day they noticed the conversion of the case to Chapter 7. This court should not permit these individual debtors to benefit from their unauthorized act in their fiduciary capacity as officers in the corporate case.

For what it may be worth, the court notes that, even if the reasoning of the Supreme Court's opinion in *Energy Re-sources* were applicable to this case because the issue involved whether this court has discretion to permit a debtor to allocate payments in a Chapter 11 plan, the court would decline to permit the allocation unilaterally attempted by the debtors here. The circumstances surrounding the timing of the payment, the manner of the payment, the *pre* petition nature of the tax for which payment was made without authorization *post* petition, and the timing and the fact of the conversion, as a matter of equity, all weigh against an exercise of the court's discretion in the manner sought by the debtors, even if the court has that discretion to exercise.

In short, the payments here were involuntary, and the Service was not required to credit the $7,700 payment by Alpha to the trust fund portion of Alpha's tax liability.

For the foregoing reasons, the court concludes that the Service has carried its burden of proof by establishing by a preponderance of the evidence that its claims are correct in theory and in their amounts. The objections to the claims are overruled, and the claims of the Service are allowed as filed.

Each debtor is given 15 days from the date hereof to file an amended Chapter 13 plan, if he desires to do so. The court will conduct a confirmation hearing in each of these cases on July 31, 1990, at 9:30 o'clock a.m., to consider confirmation of the currently proposed plan or an amended plan, if filed. Each debtor shall notice the confirmation hearing to all creditors and shall comply with all service and notice requirements of the Bankruptcy Rules. Each debtor shall file a certificate of such notice and service. Each notice to all creditors shall further provide that, at the confirmation hearing, the court will consider dismissal or conversion to a case under Chapter 7 if the Chapter 13 plan is not confirmed.

DONE and ORDERED.