**In re POYDRAS MANOR, INC.**

**Bankruptcy No. 97–14978.**

United States Bankruptcy Court, E.D. Louisiana.

Jan. 7, 2000.

Mark S. Goldstein, Alicia Bendana, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, LA, for debtor.

Stevens S. Moore, Asst. U.S. Attorney, New Orleans, LA, for trustee.

## REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

Confirmation of the debtor's third amended plan of reorganization[1] came on for hearing on October 27, 1999. On that date the court held that the plan complied with all of the requirements of 11 U.S.C. § 1129, with the exception of the plan provision that designates how the trust fund taxes owed to the Internal Revenue Service will be paid. The IRS objected to that portion of the plan, and the court took the issue under advisement. For the reasons stated below, the court finds that in a liquidating Chapter 11 plan, the debtor may designate that trust fund taxes be paid before other taxes in appropriate cases. Because such a designation is appropriate under the facts of this case, the debtor's plan is confirmed.

### I. Factual Background

The debtor operates a nursing home in St. Bernard Parish, Louisiana. Mary Sokac and Denise Sokac, mother and daughter, are the only shareholders of the debtor. Mary Sokac owns 99% of the stock, and Denise Sokac owns 1% of the stock.

Poydras Manor is the smallest nursing home in St. Bernard Parish, and is the eleventh oldest nursing home in the state.[2] Poydras Manor is a four-person-to-a-room nursing home. These kinds of nursing homes are gradually being replaced by two-person-to-a-room nursing homes.[3]

Poydras Manor's financial problems began in part from the development of new nursing homes in St. Bernard Parish.[4] For the past five years, Poydras Manor and most of the nursing homes in St. Bernard Parish have been operating below their occupancy level.[5] Poydras Manor has a 34 bed capacity, but currently has 20 residents.[6] Mary and Denise Sokac intend to sell Poydras Manor.

The major value of the debtor's business is its 34 certificates of need.[7] The certificates of need are granted by the State of Louisiana and allow nursing homes to have residents equal to the number authorized in the certificates of need. Louisiana has a moratorium on new certificates of need. Because certificates of need are location specific, no new certificates of need can be obtained in St. Bernard Parish. Therefore, in order for an existing nursing home to expand or a new nursing home to open, it must obtain an existing certificate of need. In order to transfer the certificates, someone must continue to operate the business. If the business is closed, the certificates are lost.[8]

Penny Mutz, an expert real estate appraiser and broker, testified that the value of the debtor as a going concern, including the certificates of need, is $712,000.[9] If the business is closed, the value is a distressed sale/liquidation value of $150,000 to $175,000.[10] Ms. Mutz stated that Denise and Mary Sokac are necessary to run the business, and if they were not running the business she would not be able to sell it as a going concern.[11] She also stated that the continued participation of Denise and Mary Sokac is essential if a purchaser intends to continue the business at the same location. If the potential purchaser just wanted the certificates of need, the presence of the Sokacs is still important to: (1) keep the certificates alive until they can be merged with an already existing

1. Pl. 120.

2. Confirmation Hearing Transcript ("Transcript") at 86.

3. Id.

4. Ex. 6, D. Sokac's depo. at 16.

5. Transcript at 85.

6. Ex. 6, D. Sokac's depo. at 15.

7. Id. at 34.

8. Transcript at 53–54

9. Transcript at 53.

10. Id. at 55.

11. Id. at 56.

facility; and (2) arrange for an orderly transfer.

Anthony Mendoza, operator of another nursing home in St. Bernard Parish, has made four offers to purchase Poydras Manor: $160,000, $200,000, $360,000, and $475,000 as of May 4, 1999. The offer of $475,000, which is the highest offer received for the property, is still outstanding.[12] Mr. Mendoza testified that the value of the debtor's assets in order of importance to him are: (1) the certificates of need; (2) the residents; and (3) the physical facilities.[13]

Both Denise and Mary Sokac hold multiple jobs at Poydras Manor. Denise Sokac currently fills four positions: (1) nursing home administrator (a licensed position), (2) food services supervisor (a licensed position), (3) bookkeeper/payroll clerk, and (4) patient transport.[14] She works in the nursing home from 8:00 in the morning until sometimes 9:00 to 10:00 at night, depending on the schedule.[15] Denise Sokac's salary is $2,200 per month, which is approximately $3,800 less than market salary.[16]

Mary Sokac holds the position of the activities director and the social services designee. She also serves as a librarian and ward clerk, doing all the filing from the nurses' charting.[17] She handles most of the interactions with the residents and the families. Mary Sokac's day at the nursing home usually starts about 8:00 in the morning and she remains on call until 9:00 or 9:30 at night.[18] Mary Sokac's salary is approximately $1,200 per month, which is less than the market rate for comparable positions.[19]

The debtor's plan proposes a Chapter 11 liquidation under which all of its assets will be liquidated and the proceeds distributed to creditors. The plan provides that the business will continue to operate until it is sold. Under the plan, Mary and Denise Sokac have subordinated their priority and non-priority wage claims and loan repayment claims to all other creditors.[20]

Paragraph 4.12 of the plan, entitled "Designation of Tax Payments", provides:

> The debtor will request the Court to render an order that all payments to taxing authorities, including without limitation, the Internal Revenue Service and the Louisiana Department of Revenue and Taxation, shall be designated and applied first to any outstanding "trust fund" portions of the tax authority's claims, in accordance with *United States v. Energy Resources Company,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).[21]

## II. *Analysis*

The IRS argues that the debtor's plan improperly designates that payments to the IRS shall first be applied to the trust fund portion of the debtor's taxes. The IRS submits that this type of designation is not permitted in a liquidating Chapter 11 plan.

The seminal case on the issue of designation of trust fund taxes under a Chapter 11 plan is the case of *U.S. v. Energy Resources Co.*[22] In *Energy Resources,* the United States Supreme Court held that the bankruptcy court had the discretion to "order the IRS to apply tax payments to offset trust fund obligations where it con-

---

12. Transcript at 57–58.

13. Transcript at 87.

14. Transcript at 23–24.

15. Transcript at 23–24.

16. Transcript at 24.

17. Transcript at 42, 44.

18. Transcript at 43.

19. Transcript at 43—44.

20. Pl. 120 at ¶ 4.9.

21. Pl. 120 at ¶ 4.12.

22. 495 U.S. 545, 551, 110 S.Ct. 2139, 2143, 109 L.Ed.2d 580 (1990).

cludes that this action is necessary for a reorganization's success".[23]

Several cases after *Energy Resources* have considered whether trust fund designation is permissible when the Chapter 11 plan is a liquidating plan, but neither the Fifth Circuit nor any district court in the Fifth Circuit has dealt with this issue. The only bankruptcy court in the Fifth Circuit to address the issue did not decide whether the *Energy Resources* holding could be extended to Chapter 11 liquidations.[24]

The IRS contends that the majority of the cases that have addressed the trust fund issue have confined the scope of *Energy Resources* to Chapter 11 reorganizations that were not liquidations. The debtor disagrees with the IRS's interpretation of the decisions, and asserts that three cases, *In re Deer Park, Inc.*,[25] *In re Flo–Lizer, Inc.*,[26] and *In re 20th Century Enterprises, Inc.*[27] support its argument that the *Energy Resources* holding applies to Chapter 11 liquidations.

The court agrees with the debtor's analysis of the case law. Four of the cases cited by the IRS are not relevant to the issue before the court.[28] One of the cases, *In re Laminating, Inc.*,[29] did not decide the legal issue, and held that the debtor had not shown that allocating trust fund tax payments was necessary to effectuate the liquidating plan. Two of the cases cited by the IRS, *In re Kare Kemical,*

*Inc.*,[30] and *In re Equipment Fabricators, Inc.*,[31] held that *Energy Resources* applies to Chapter 11 reorganizations and not to Chapter 11 liquidations. The last case, *In re Visiting Nurse Ass'n of Tampa Bay, Inc.*,[32] stated that it was bound by the Eleventh Circuit's decision in *In re Kare Kemical.*

Thus, the IRS's assertion that the majority of cases support its position is incorrect. Of the cases cited by the IRS, three cases, including a circuit court, a district court, and a bankruptcy court, support the IRS's position. On the other hand, the three cases cited by the debtor, including a circuit court, a district court, and a bankruptcy court, support the debtor's position.

The cases that support the debtor's position are persuasive. In the case of *In re Deer Park, Inc.*,[33] a liquidating Chapter 11 plan was approved whereby the debtor-in-possession's assets were sold and funds were generated for payment of priority creditors and secured creditors, including tax claims owed to the IRS. In an effort to be relieved of potential personal tax liability, the principal of the debtor continued to act on behalf of the debtor both before and after plan confirmation, and received no compensation. The court found that the debtor's principal's assistance was essential to the plan. The court held that *Energy Resources* did apply to a liquidating Chapter 11 plan. The court reasoned:

> did not involve the designation of tax payments issue.); *In re Poleshuk,* 115 B.R. 716 (Bankr.M.D.Fla.1990)(Case converted to Chapter 7); *In re Educare Centers of Arkansas, Inc.*, 104 B.R. 106 (Bankr.W.D.Ark.1989)(Decided in 1989, prior to the *Energy Resources* decision.)

**23.** *Id.*

**24.** *In re Laminating, Inc.*, 148 B.R. 259, 261–62 (Bankr.S.D.Tex.1992).

**25.** 10 F.3d 1478 (9th Cir.1993).

**26.** 164 B.R. 749 (S.D.Ohio 1994).

**27.** 1994 WL 779356 (Bankr.N.D.Miss. Jan. 18, 1994).

**28.** *See In re Jehan–Das, Inc.*, 925 F.2d 237 (8th Cir.1991)(Involving the issue of whether the debtor's post-petition payments to the IRS were voluntary); *Locks v. U.S. Trustee,* 157 B.R. 89 (W.D.Pa.1993)(Addressing the issue of the appointment of a futures representative. The IRS was not a party, and the case

**29.** 148 B.R. at 261.

**30.** 935 F.2d 243 (11th Cir.1991).

**31.** 127 B.R. 854 (D.Ariz.1991).

**32.** 128 B.R. 835 (Bankr.M.D.Fla.1991).

**33.** 10 F.3d 1478 (9th Cir.1993).

As explained by the BAP in its opinion, a debtor's continuing participation in a planned liquidation may be necessary to bring about maximum recovery for creditors. Chapter 11 of the Bankruptcy Code provides that liquidation may be a form of reorganization, as opposed to a straight liquidation under Chapter 7.

The rationale for the Court's holding in *Energy Resources*, that a bankruptcy court may order the IRS to allocate tax payments to offset trust fund obligations where necessary for a successful reorganization, was explained in *In re Gregory Engine & Machine Svcs., Inc.*, 135 B.R. 807 (Bankr.E.D.Tex.1992). There the court stated: 'Although not stated by the Supreme Court, this Court is of the opinion that allowing [such an allocation] is necessary to the effective reorganization of a Chapter 11 debtor in that such a designation correspondingly reduces the responsible person liability of debtor's officers and managers. Given this result, these officers and managers have every incentive to assist in debtor's reorganization.'

We agree with this analysis in *In re Gregory*. It does not matter that the Chapter 11 reorganization plan is a liquidating plan, so long as the allocation of trust fund tax payments is necessary to the success of the reorganization.[34]

Similarly, the district court in *In re Flo-Lizer, Inc.*,[35] summarily affirmed the bankruptcy court, stating: "... the Court agrees with the bankruptcy court that the best reasoned approach in this case is illustrated by the *Deer Park* decision".

Finally, in the case of *In re 20th Century Enterprises, Inc.*,[36] the bankruptcy court found that two of the debtor's officers, both of whom would conceivably be considered as responsible parties by the IRS, made substantial contributions to the trustee's efforts to maintain numerous actions to establish and collect debts owed to the debtor in an effort to increase the size of the estate. The court agreed with the conclusion reached by the *Deer Park* court, and cited extensively from the decision of the Bankruptcy Appellate Panel for the Ninth Circuit.[37]

■ This court holds that the better reasoned view is set forth in the *Deer Park* decision and its progeny. Liquidation under Chapter 11 is a form of reorganization, as opposed to a straight liquidation under Chapter 7. The bankruptcy court has the authority to order the designation of trust fund payments under a Chapter 11 liquidating plan in appropriate cases.

The next issue is whether the court should exercise its authority under the facts of this case. The IRS points out that the Sokacs are being paid, whereas the principal in *Deer Park* was not being paid.

This distinction is insufficient. The testimony showed that the Sokacs are being paid a salary considerably below market value. The court finds this testimony to be credible. In addition, it is much more likely in this case that Poydras Manor can be sold as a going concern with the Sokacs participating and the certificates outstanding, than there was a chance of Deer Park reopening as a ski resort even with the continued participation of the principal in that case.

*In the 20th Century Enterprises, Inc.* case, a Chapter 11 trustee had been appointed.[38] It would seem, therefore, that the continued participation of the responsible individuals in *20th Century* was less crucial to a liquidating plan than in this

---

**34.** *In re Deer Park, Inc.*, 10 F.3d at 1481–82 [citations omitted]. Note that the case of *In re Gregory Engine & Machine Svcs., Inc.*, cited in this quotation was a Chapter 7 case.

**35.** 164 B.R. at 751.

**36.** 1994 WL 779356 at *5.

**37.** *Id.*, citing, *In re Deer Park, Inc.*, 136 B.R. 815, 816–19 (9th Cir. BAP 1992).

**38.** 1994 WL 779356 at *4.

case where all the evidence shows that only the Sokacs can keep the business running, thereby keeping the certificates of need in good standing until the business is sold.

The court finds that under the particular facts of this case, the participation in the plan by the Sokacs is necessary to return the maximum value to the creditors. The certificates of need are the major value of the debtor's business. If the Sokacs do not participate in the plan process, the certificates of need will expire. The plan provision designating that all payments to the IRS shall be to the outstanding trust fund portion of the IRS's claim is necessary to bring about the maximum recovery to all the creditors and for the successful liquidation of the debtor.

### III. *Conclusion*

The court holds that the *Energy Resources* case can be extended to Chapter 11 liquidating plans of reorganization in appropriate cases. Under the facts of this case, the allocation of tax payments to trust fund taxes as provided for in the debtor's plan is proper because the continued participation by the Sokacs is necessary to bring about the maximum recovery to all the creditors from the planned liquidation of the business.

For these reasons, the objection by the IRS is denied and the debtor's third amended plan of reorganization is confirmed. The debtor shall submit an appropriate order of confirmation.

New Orleans, Louisiana, this 7th day of January, 2000.

/s/

JERRY A. BROWN

BANKRUPTCY JUDGE

97–14978

MARK S. GOLDSTEIN

ALICIA BENDANA

LOWE, STEIN, HOFFMAN, ALLWEISS & HAUVER

701 Poydras Street

Suite 3600

New Orleans, LA 70139–3600

STEVENS S. MOORE

Asst. U.S. Attorney

Hale Boggs Federal Building

501 Magazine Street, 2nd Floor

New Orleans, LA 70130

OFFICE OF THE UNITED STATES TRUSTEE

01/07/00–(av)